184 P.3d 215

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Shawn Patrick DeWITT, Defendant–Respondent.**

No. 33706.

Court of Appeals of Idaho.

April 29, 2008.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for appellant. John C. McKinney argued.

John F. Porter, Troy, for respondent.

WALTERS, Judge Pro Tem.

The state appeals from the decision of the district court affirming a magistrate order suppressing evidence of blood testing done on Shawn Patrick DeWitt.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

DeWitt was seriously injured in a single car accident. He was the only individual in the car, and emergency responders removed him from the driver's seat so that he could be transported to the hospital. Deputy Damon Carpenter of the Latah County Sheriff's Department was dispatched to the emergency room to check on DeWitt's condition. As Deputy Carpenter approached DeWitt, he noticed a smell of alcohol which increased as he walked into the room where DeWitt was being treated. Suspecting that DeWitt had been driving under the influence of alcohol, he contacted Sergeant Phil Gray, who was at the scene of the accident. Sgt. Gray advised him that DeWitt's vehicle smelled of alcohol, and that there were empty beer cans in and around it. Sgt. Gray instructed Deputy Carpenter to obtain a blood sample from DeWitt. Although DeWitt was unconscious, Deputy Carpenter read out loud a form outlining the consequences of refusing evidentiary testing contained in Idaho Code § 18–8002(3). Deputy Carpenter then instructed a healthcare professional on the hospital staff to draw blood from DeWitt for evidentiary testing. DeWitt remained unconscious throughout this procedure. Subsequent testing revealed that DeWitt had a blood alcohol concentration of 0.20.

DeWitt was charged with misdemeanor second-time DUI. I.C. §§ 18–8004, –8005(4).[1] DeWitt filed a motion to suppress the evidence of the blood test, arguing that because it was done while he was unconscious, the blood draw violated his Fourth Amendment rights. The magistrate granted the motion to suppress, a decision that the district court affirmed on intermediate appeal. The state appeals.

## II.

### DISCUSSION/ANALYSIS

#### A. Standard of Review

■ The Supreme Court has recently altered the standard by which we review a decision of the district court acting in its appellate capacity. Rather than directly reviewing the magistrate court's decision independently of, but with due regard for, the district court's decision, we instead directly review the district court's decision. *Losser v. Bradstreet,* 145 Idaho 670, 183 P.3d 758 (2008). We do examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.; Nicholls v. Blaser,* 102 Idaho 559, 633 P.2d 1137 (1981).

#### B. The Evidence of the Blood Draw Should Not Have Been Suppressed

■ The magistrate found that drawing blood from the unconscious DeWitt was a warrantless seizure in violation of his Fourth Amendment rights, and therefore suppressed the evidence obtained from that blood draw. The district court affirmed. On review of a decision to grant or deny a motion to suppress evidence, the Court employs a split standard of review. The Court will defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). However, the Court exercises free review over the application of constitutional standards to those facts. *Id.*

■ The administration of a blood alcohol test constitutes a seizure of the person

1. He was initially charged with misdemeanor excessive DUI, I.C. § 18–8004C, but the charge was amended.

**712**

and a search for evidence within the purview of the Fourth Amendment to the United States Constitution. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908, 917 (1966); *State v. Worthington*, 138 Idaho 470, 472, 65 P.3d 211, 213 (Ct.App.2002). Searches and seizures conducted without a warrant are presumptively unreasonable. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919; *State v. Curtis*, 106 Idaho 483, 488, 680 P.2d 1383, 1388 (Ct.App.1984). To overcome the presumption, the state bears the burden of establishing two prerequisites. First, the state must prove that a warrantless search fell within a well-recognized exception to the warrant requirement. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). Second, the state must show that even if the search is permissible under an exception to the warrant requirement, it must still be reasonable in light of all of the other surrounding circumstances. *Id.*

**1. Warrant exception**

■ There are two exceptions to the warrant requirement which are applicable in this case: exigent circumstances and consent. The exigent circumstances exception allows agents of the state to conduct a warrantless search when there is a "compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978); *State v. Wren*, 115 Idaho 618, 624, 768 P.2d 1351, 1357 (Ct.App.1989). It is well established that blood draws to test for alcohol concentration fall within this exigency exception because blood alcohol content diminishes over time, and valuable evidence would be lost in the time required to obtain a warrant. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d at 919–20; *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989); *Worthington*, 138 Idaho 470, 65 P.3d 211; *State v. Cooper*, 136 Idaho

697, 700–01, 39 P.3d 637, 640–41 (Ct.App. 2001). DeWitt argues that the exigent circumstances exception to the warrant requirement does not apply because he was charged with misdemeanor DUI rather than a felony. This is not a persuasive argument. In *Schmerber* the United States Supreme Court applied the exigency exception in the context of a misdemeanor DUI charge. *Schmerber*, 384 U.S. at 758 n. 1, 86 S.Ct. at 1829 n. 1, 16 L.Ed.2d at 912 n. 1. Further, this Court rejected DeWitt's argument in *State v. Robinson*, 144 Idaho 496, 163 P.3d 1208 (Ct.App. 2007), where we held that a misdemeanor driving under the influence offense, which carries a penalty of up to six months jail time, falls under the category of an offense subject to the exigent circumstances doctrine.

■ Even if the exigent circumstances exception was inapplicable, the blood draw was valid pursuant to DeWitt's implied consent. *See Diaz*, 144 Idaho 300, 160 P.3d 739; *State v. Rodriguez*, 128 Idaho 521, 915 P.2d 1379 (Ct.App.1996). Valid consent is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Nickerson*, 132 Idaho 406, 410, 973 P.2d 758, 762 (Ct.App.1999). Under Idaho's implied consent statute, I.C. § 18–8002(1), anyone driving on Idaho roads is deemed to have impliedly consented to evidentiary testing for the presence of alcohol or drugs when a police officer has reasonable cause to believe the person was driving under the influence.[2] In other words, "[b]y virtue of this statute, 'anyone who accepts the privilege of operating a motor vehicle upon Idaho's highways has consented in advance to submit to a BAC test.'" *Rodriguez*, 128 Idaho at 523, 915 P.2d at 1381 (quoting *Matter of McNeely*, 119 Idaho 182, 187, 804 P.2d 911, 916 (Ct.App. 1990)). *See also Diaz*, 144 Idaho 300, 160 P.3d 739. Implied consent to evidentiary

**2.** I.C. § 18–8002(1) reads as follows:

Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18–8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating

substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18–8004, Idaho Code, or section 18–8006, Idaho Code.

testing is not limited to a breathalyzer test, but may also include testing the suspect's blood or urine. I.C. § 18–8002(9). The evidentiary test to be employed is of the officer's choosing. *Diaz,* 144 Idaho at 302, 160 P.3d at 741. In this case, DeWitt does not assert that he was not in control of the vehicle, nor does he argue that the officer lacked reasonable grounds to suspect that he was driving under the influence. Indeed, from the odor of alcohol and presence of beer cans in his vehicle, there was ample evidence that DeWitt had been driving under the influence at the time of the accident. *See Curtis,* 106 Idaho at 489, 680 P.2d at 1389.

DeWitt nevertheless argues that his implied consent was nullified because he was unconscious when he was "informed" of the consequences of refusal. Idaho Code § 18–8002(3) requires that, at the time of evidentiary testing, the suspect must be informed of the consequences if he refuses to submit or complete evidence testing, including a civil penalty of $250, and seizure and suspension of his driver's license, and of his right to request a hearing to show cause why his license should not be suspended. The magistrate found that DeWitt's implied consent was rendered invalid because Deputy Carpenter read him a form outlining these consequences while he was unconscious. Thus, the magistrate reasoned, because DeWitt did not have an opportunity to refuse to submit to the evidentiary testing, he was necessarily unable to consent.

The Idaho Supreme Court squarely rejected this reasoning in *Woolery,* 116 Idaho 368, 775 P.2d 1210. In that case, the defendant was the driver of a vehicle involved in an accident. At the instruction of a police officer, hospital personnel drew a sample of his blood; however, the officer neglected to in-form the defendant of the consequences of refusing as required by a prior version of the statute. The defendant argued that the evidence obtained in the blood draw should be suppressed on that ground. The Idaho Supreme Court disagreed. The Court stated that a drunken driver has no legal right to resist or refuse evidentiary testing.[3] The Court noted that in recognition of the driver's *physical* ability to refuse to submit, the legislature enacted the license suspension statute to discourage and civilly penalize such a refusal. The Court said that

"The purpose of a warning of license suspension following a refusal ... is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, but rather to nonforcibly enforce the driver's previous implied consent." [*State v. Newton,* [291 Or. 788] 636 P.2d 393, 398 (Or.1981) (*overruled on other grounds by State v. Spencer,* [305 Or. 59] 750 P.2d 147 (Or.1988)).]

... The legislature acknowledged that some individuals refuse to comply with their previously granted consent to submit to an evidentiary test. Rather than condone a physical conflict, the legislature provided for the administrative revocation of the license of an individual who refuses to comply with his previously given consent. Such legislative acknowledgment was not meant to hamstring the ability of law enforcement to properly investigate and obtain evidence of serious crimes committed by those individuals who have chosen to drink and then drive.

*Woolery,* 116 Idaho at 373, 775 P.2d at 1215. *See State v. Burris,* 125 Idaho 289, 869 P.2d 1384 (Ct.App.1994) (consent is not vitiated even if defendant is not informed of the

---

**3.** Based on a prior version of the implied consent law and license suspension for refusal to submit, in *Curtis,* 106 Idaho at 489, 680 P.2d at 1389, we said that this statute created a statutory right to refuse evidentiary testing, and that "implied consent" was revoked if the suspect expressly declined to take the test. Our courts have since held otherwise. *See State v. McCormack,* 117 Idaho 1009, 1014, 793 P.2d 682, 687 (1990) ("Although under I.C. § 18–8002(3) a driver has the physical ability to refuse to submit to an evidentiary test, that section did not create a statutory right in a driver to withdraw his im-plied consent or to refuse to submit to an evidentiary test to determine his blood alcohol level."); *Nickerson,* 132 Idaho at 410, 973 P.2d at 762 (whether defendant's physical cooperation was coerced was superfluous, for defendant had no right to withdraw the statutorily implied consent); *State v. Harmon,* 131 Idaho 80, 85, 952 P.2d 402, 407 (Ct.App.1998) ("[W]here reasonable grounds for the request exists, and the test is conducted in a reasonable manner, a motorist has no legal right to refuse an alcohol concentration test.").

consequences of refusal under I.C. § 18–8002(3)). Informing a suspect about the consequences of refusing an evidentiary test is not intended to be an opportunity for a defendant to withdraw his consent; rather, it is an administrative tool designed to increase the likelihood that the suspect will peaceably submit to testing that he has no legal right to refuse. Even if the officer did not notify the defendant of the consequences of the refusal as required by I.C. § 18–8002(3), the results of the evidentiary test are admissible in a criminal prosecution. *State v. Harmon*, 131 Idaho 80, 85, 952 P.2d 402, 407 (Ct.App. 1998).[4]

### 2. Reasonableness

Regardless of how it qualifies as an exception to the warrant requirement, a blood draw must comport with Fourth Amendment standards of reasonableness. *Schmerber*, 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918. To that end, the procedure must be done in a medically acceptable manner and without unreasonable force. *Id.* at 771–72, 86 S.Ct. at 1836–37, 16 L.Ed.2d at 920; *Diaz*, 144 Idaho at 303, 160 P.3d at 742. In this case, the evidence suggests that DeWitt's blood was drawn at a hospital by a healthcare professional in a safe and reasonable

manner. The fact that he was unconscious is of no consequence. *Cf. Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (noting that, under a due process analysis, nothing brutal or offensive in the taking of blood for evidentiary testing while the suspect was unconscious).

### C. DeWitt is not Entitled to Suppression of the Evidence under the Theory that the Officer Exceeded His Authority to Request a Blood Draw

▮ On appeal, DeWitt advances the theory that, regardless of any warrant exception, the evidence should be suppressed because Deputy Carpenter did not have statutory authority to instruct the healthcare professional to draw DeWitt's blood. In particular, he argues that Deputy Carpenter could not order a blood draw because he did not have suspicion that DeWitt had committed one of the offenses enumerated under I.C. § 18–8002(6)(b). He has misinterpreted the statute. Idaho Code § 18–8002(6)(b) empowers a law enforcement officer to order qualified healthcare professionals to conduct a blood draw if the officer has probable cause to believe that the suspect has committed aggravated DUI or vehicular manslaughter.[5] As the Idaho Supreme Court

---

**4.** The failure to advise a suspect of the consequences of refusal would be significant only with regard to the administrative suspension of the suspect's license following a refusal. *See In re Beem*, 119 Idaho 289, 805 P.2d 495 (Ct.App. 1991) (license could not be suspended for refusal to submit the evidentiary testing when the defendant was incorrectly advised of the consequences of refusal).

**5.** Idaho Code § 18–8002(6) provides in pertinent part that:

No ... health care professional ... shall incur any civil or criminal liability for any act arising out of administering an evidentiary test for alcohol concentration or for the presence of drugs or other intoxicating substances at the request or order of a peace officer ... provided, that nothing in this section shall relieve any such person or legal entity from civil liability arising from the failure to exercise the community standard of care.
. . . .
(b) A peace officer is empowered to order [a healthcare professional] to withdraw a blood sample for evidentiary testing when the peace officer has probable cause to believe that the

suspect has committed any of the following offenses:
(i) Aggravated driving under the influence of alcohol, drugs or other intoxicating substance as provided in section 18–8006, Idaho Code;
(ii) Vehicular manslaughter as provided in subsections (3)(a), (b) and (c) of section 18–4006, Idaho Code;
(iii) Aggravated operating of a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances as provided in section 67–7035, Idaho Code; or
(iv) Any criminal homicide involving a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances.
. . . .
(e) The withdrawal of the blood sample may be delayed or terminated if:
(i) In the reasonable judgment of the hospital personnel withdrawal of the blood sample may result in serious bodily injury to hospital personnel or other patients; or
(ii) The licensed health care professional treating the suspect believes the withdrawal of the blood sample is contraindicated because of the medical condition of the suspect or other patients.

recently held, however, this statute does not limit the circumstances in which an officer may ask that a blood draw be conducted. The Court said:

> ... Idaho Code § 18–8002(6)(b) permits an officer to compel hospital personnel to withdraw blood upon probable cause of certain crimes. The statute does not prohibit an officer from asking hospital personnel to withdraw blood for evidentiary testing for DUI. In fact, Idaho Code § 18–8002(6) provides immunity to hospital personnel for "any act arising out of administering an evidentiary test for alcohol concentration ... at the *request or order* of a peace officer." (emphasis added).... A plain reading of Idaho Code § 18–8002(6) shows that an officer may always request hospital personnel to draw a suspect's blood upon suspicion for DUI but may only compel a blood draw under certain circumstances.

*Diaz,* 144 Idaho 300, 303–04, 160 P.3d at 742–43 (2007). *See Halen v. State,* 136 Idaho 829, 834, 41 P.3d 257, 262 (2002) ("officer's authority to require a defendant to submit to a blood withdrawal, under I.C. § 18–8002, does not turn on whether aggravating factors [such as those contained in I.C. § 18–8002(6)(b) ] are present.").

Moreover, I.C. § 18–8002(6) is not intended to protect the suspect's rights. When read in its entirety, it is apparent that section 18–8002(6) is intended to provide protection from civil or criminal liability for any healthcare professional who administers an evidentiary test for the presence of drugs or alcohol at the request or order of a law enforcement officer. As we stated in *Worthington,* 138 Idaho at 475, 65 P.3d at 216:

> If the officer exceeded his authority [to order a blood draw pursuant to I.C. § 18–8002(6) ], the aggrieved party was the lab technician who received the unlawful order, not [the defendant] who, by virtue of the exigent circumstance exception to the warrant requirement and Idaho's implied consent statute, had no legal entitlement to refuse or prevent the blood draw.... [A] defendant may not raise a violation of a third party's rights as a basis for the suppression of evidence.

As such, there is no merit to DeWitt's argument that the evidence should be suppressed because the officer allegedly overstepped his statutory authority to order a healthcare professional to conduct the blood test.

### III.

### CONCLUSION

The blood draw from DeWitt was lawfully done. We therefore reverse the district court's appellate decision affirming the magistrate's suppression of this evidence, and remand for further proceedings.

Judge LANSING and Judge PERRY concur.