**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36539**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2010 Opinion No. 65** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: September 21, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| CLARENCE TAMS, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. John T. Mitchell, District Judge. Hon. Quentin Harden, Magistrate.

Order of the district court, on intermediate appeal from the magistrate division, vacating judgment of conviction for placing debris on a highway, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for appellant. Rebekah A. Cudé argued.

Featherston Law Firm, Chtd., Sandpoint, for respondent. Daniel P. Featherston argued.

_____

MELANSON, Judge

The State of Idaho appeals from the district court's intermediate appellate decision vacating Clarence Tams' judgment of conviction for placing debris on a highway. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Tams was hauling cattle from Canada to a slaughterhouse in Washington. Prior to crossing the border into the United States, Tams passed through a significant rainstorm, which added rainwater to the mixture of cattle manure and urine accumulating in the trailer. While traveling through northern Idaho en route to the slaughterhouse, Tams made a slow turn onto a local highway. A nearby officer observed a mixture of cattle manure, urine, and water spill from Tams' cattle trailer onto the roadway. When the officer pulled Tams over, more of the mixture

1

spilled out of the trailer. The officer cited Tams with misdemeanor placing debris on a highway. I.C. § 18-3906.

At trial, Tams argued that I.C. § 18-3906 did not apply to the dumping of cow manure or urine. The magistrate disagreed, holding that a mixture of cow manure and urine is a waste substance under the statute and that Tams negligently permitted the deposit of a waste substance onto a public highway. The magistrate found Tams guilty of violating I.C. § 18-3906 and sentenced him to sixteen hours in the sheriff's labor program and a $100 fine.

Tams appealed to the district court, which vacated Tams' judgment of conviction. The district court determined that the magistrate erred because the manure mixture was not considered a waste substance under the statute. Specifically, the district court reasoned that, unlike the other substances expressly mentioned in the statute, the mixture leaking from Tams' trailer was a liquid. Further, the district court concluded that the magistrate erred because the state had not proven that Tams was criminally negligent. The state appeals.

## II.

## ANALYSIS

The state argues that the district court erred when it vacated Tams' judgment of conviction. Specifically, the state asserts that the district court erred by concluding that the mixture spilled from Tams' trailer was not a waste substance under I.C. § 18-3906. Further, the state asserts that the district court erred when it held that there was not substantial evidence to support the magistrate's finding that Tams was criminally negligent.

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

### A. Idaho Code Section 18-3906

The state argues on appeal that I.C. § 18-3906 prohibits the spilling of a mixture of cow manure, urine, and rainwater onto our public roadways. Idaho Code Section 18-3906(1) states, in relevant part:

2

> If any person shall willfully or negligently throw from any vehicle, place, deposit, or permit to be deposited upon or alongside of any highway, street, alley or easement used by the public for public travel, any debris, paper, litter, glass bottle, glass, nails, tacks, hoops, cans, barbed wire, boards, trash or garbage, lighted material or *other waste substance*, such persons shall, upon conviction thereof, be punished by a fine not exceeding three hundred dollars ($300) or by imprisonment in the county jail not exceeding ten (10) days.

(Emphasis added). The magistrate determined that a mixture of cow manure and urine is a waste substance for purposes of the statute. However, the district court disagreed, holding that, because the materials specifically listed in the statute are solid substances, the legislature must have intended the "other waste substance" language to denote only solid materials. The state argues on appeal that the magistrate's interpretation of I.C. § 18-3906 properly reflects the plain meaning of the statute.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation which will not render it a nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Waste is defined as "refuse from places of human or animal habitation," such as garbage, rubbish, excrement, or sewage. Merriam Webster's Collegiate Dictionary, 1333 (10th ed. 1994).

3

Substance is defined as "physical material from which something is made or which has a discrete existence." *Id*. at 1175. Testimony presented at trial indicated that the substance leaking from Tams' trailer was cow manure mixed with urine and rainwater. Manure and urine are types of refuse from a place of animal habitation, consistent with the definition of waste. Further, a mixture of cow manure and urine is a physical material that has a discrete existence, consistent with the definition of substance. As such, the magistrate did not err in determining that a mixture of cow manure and urine comes under the purview of I.C. § 18-3906.

Tams also urges this Court to examine the legislative intent behind I.C. § 18-3906. Specifically, Tams argues that drivers of vehicles transporting livestock should not be subject to I.C. § 18-3906 due to the important role that agriculture plays in Idaho's economy. In support of this argument, Tams relies upon provisions of Idaho law to demonstrate that the legislature intended to separately regulate the waste products of the livestock industry.[1] However, as mentioned above, if the plain meaning of a statute is clear and unambiguous, we need not engage in statutory construction. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. A mixture of cow manure and urine falls within the plain meaning of the phrase "waste substance." Therefore, we will not go beyond the language of the statute to examine the legislative intent behind I.C. § 18-3906. As such, the magistrate's conclusion that the mixture spilled from Tams' trailer fell under the purview of I.C. § 18-3906 was not in error.

B.      Negligence

In order to convict a defendant under I.C. § 18-3906, the state must prove that the defendant negligently or willfully placed, deposited, or permitted to be deposited a waste substance on a public highway. Idaho Code Section 18-101(2) defines "negligently" as "a want of such attention to the nature of probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

---

[1]      It should be noted that the statute provisions cited by Tams involve the authority of the Idaho Department of Agriculture to regulate cattle feed lots and the odor emanating from such lots. *See* I.C. §§ 22-4902 and 25-3807. For example, I.C. § 22-4902 requires cattle feed lots to comply with state and federal clean water standards. Idaho Code Section 18-3906, however, is a criminal statute, regulating conduct on public roads and highways. There is no exception for drivers transporting livestock or other agricultural products.

4

At trial and at the close of the state's evidence, Tams moved for a judgment of acquittal pursuant to I.C.R. 29, arguing that the state had not presented substantial evidence that Tams had acted willfully or negligently. The magistrate ruled as follows:

> In ruling in this case I would note that the court has reviewed I.C. 18-3906 as well as I.C. 18-101 and the negligence required is not criminal negligence in the sense that his behavior must be reckless or heedless or wanton. All it requires is the willfulness which may be an indifference to the safety or rights of others and so the court would deny the motion to dismiss.

At the close of evidence, the magistrate ruled from the bench. After reciting the definition "willfully or negligently" in I.C § 18-101(2), the magistrate ruled that Tams' operation of the truck while the manure mixture sloshed onto the highway constituted a "willful indifference to the safety or rights of other members of the motoring public." This standard differs from the standard set forth in I.C. § 18-101 but is consistent with *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937). In that case, the Court held that an involuntary manslaughter statute prohibiting acts committed "without due caution and circumspection" (an ordinary negligence standard) must be read together with I.C. § 17-114. *Id.* at 256, 65 P.2d 162. Idaho Code Section 17-114 was later renumbered to its current designation of I.C. § 18-114. Both versions of the statute provide that, "in every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." The *McMahan* Court ruled that the term "criminal negligence" means gross negligence. *Id.* at 256, 65 P.2d 162. Such negligence "amounts to a reckless disregard of consequences and of the rights of others." *Id.* at 256, 65 P.2d at 162-63. The *McMahan* Court acknowledged the definition of negligence found in I.C. § 18-101 (then codified at I.C. § 17-101), but essentially held that it was subordinate to the I.C. § 18-114 requirement of "criminal negligence." *Id.* at 257-58, 65 P.2d at 163. The Court reasoned as follows:

> The legislature did not intend every act done negligently, resulting in what would have been a crime if done intentionally, to be criminal because of the negligence, but intended only to constitute such acts criminal in the event such negligence amounted to the degree contemplated by [I.C. § 18-114].

*Id.* at 257, 65 P.2d at 163. *See also State v. Sibley*, 138 Idaho 259, 263-64, 61 P.3d 616, 620-21 (Ct. App. 2002). Such criminal negligence may be committed by commission or omission. *State v. Taylor*, 59 Idaho 724, 735, 87 P.2d 454, 459 (1939). The *McMahan* interpretation of

5

I.C. § 18-114 and its interaction with I.C. § 18-101(2) continues to be controlling unless the legislature has specifically altered this negligence standard in defining a particular offense. *See Haxforth v. State*, 117 Idaho 189, 190, 786 P.2d 580, 581 (Ct. App. 1990). *See also State v. Long*, 91 Idaho 436, 441-42, 423 P.2d 858, 863-64 (1967); *State v. Curtis*, 106 Idaho 483, 487-88, 680 P.2d 1383, 1387-88 (Ct. App. 1984). Consistent with this line of authority, Idaho Criminal Jury Instruction No. 342 defines criminal negligence as "a wanton, flagrant or reckless disregard of consequences or willful indifference of the safety or rights of others."

We next consider whether there was substantial and competent evidence to support the magistrate's finding that Tams was criminally negligent. The state introduced photographs at trial, taken after the officer had stopped Tams for littering, which depicted waste on the ground next to Tams' cattle trailer. The magistrate found that such photographic evidence demonstrated that the waste was sloshing out of the vents of the trailer, creating a safety hazard for other drivers. As a result, the magistrate held that Tams negligently spilled manure on the highway because he failed to meet his obligation to pull the trailer over and open the drains to release the manure prior to driving further.

The officer testified that, at the intersection of two state highways near Bonners Ferry, he witnessed a large amount of cow manure and urine spilling out from underneath Tams' trailer, along each side of the trailer near the rear wheels. The officer also testified that the liquid leaking from the trailer during the traffic stop came from the underside of the trailer. Further, the officer testified that the manure and urine continued to leak while the trailer was stopped and more liquid accumulated on the ground near the trailer after the officer took the photos. In addition, both Tams and a former truck driver testified that cattle shift around in the trailer while being hauled. Tams and the former driver stated that, at times, cattle step on or near a floor drain, causing the floor to flex and leak manure and urine onto the road. Therefore, based on the testimony presented at trial, it appears that the manure and urine leaked through the floor of the trailer. While the photographs presented at trial indicate that some of the mixture may have spilled out of the truck's vents, testimony by the officer indicates that the majority of the liquid leaked onto the roadway came from underneath the trailer.

Tams presented evidence that the floor drains were properly closed and locked at the time of the traffic stop, that the trailer and its drains had not been tampered with, that the trailer was sealed pursuant to United States and Canadian regulations, and that it was common practice for

6

trailer drivers not to open drains while cattle are in the trailer because it may do harm to the animals should they step through a drain opening. In addition, Tams testified that access to the inside of his trailer, after it had been sealed, was limited to using a door on the roof of the trailer, which he considered to be unsafe. Both Tams and the former driver testified that there was no place between Canada and the slaughterhouse to unload the cattle to clean out the trailer. Such testimony was undisputed by the state. The state argued that Tams' negligence was a matter of common sense because it was a rare event for manure to spill onto public roadways and, when something rare like that occurs, it must be negligence that caused it. Nevertheless, the state did not present evidence of any facility where Tams could have cleaned out his truck prior to crossing into the United States. Rather, the state argued that the amount of manure placed on the roadway was so significant that negligence was to be presumed.

The evidence presented at trial, however, is contrary to the magistrate's finding that Tams acted negligently. While the amount of manure on the road was significant, the state failed to present evidence that Tams demonstrated a reckless disregard of the consequence of the leaking manure and urine or to the rights or safety of others. Further, the magistrate's assertion that Tams should have opened the drains to dump manure and urine onto a rural field was not supported by any evidence that doing so could be done safely and legally. In addition, while the state now contends on appeal that Tams should have opened the drains and cleaned out his trailer prior to sealing the truck and entering the United States, it presented no evidence of a facility where he could have done so. Tams also testified that the rainstorm lasted until about five miles before he arrived at the border and that there were no facilities near the border to open the drains and clean out the trailer after the rainstorm had subsided, but prior to his truck being sealed. Therefore, substantial evidence did not support the magistrate's conclusion that Tams was criminally negligent. Accordingly, the district court did not err by vacating Tams' judgment of conviction.

Tams raises other issues on appeal. However, because we affirm the district court's decision to vacate Tams' judgment of conviction, we decline to address those remaining issues.

## III.

## CONCLUSION

The magistrate did not err by concluding that a mixture of cow manure and urine is considered a waste substance under I.C. § 18-3906. However, the magistrate erred by

7

determining that Tams was criminally negligent.  Therefore, the district court's order vacating Tams' judgment of conviction for placing debris on a public highway is affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**