**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37018**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Opinion No. 77 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: November 23, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MATTHEW GILBERT SCOTT, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge. Hon. Michael Griffin, Magistrate.

Decision of the district court affirming the magistrate's order granting motion to suppress, reversed and remanded.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Gabriel McCarthy, Boise, for respondent. Gabriel McCarthy argued.

_____

WALTERS, Judge Pro Tem

The State appeals the district court's decision affirming the magistrate's order granting a motion to suppress evidence. The magistrate suppressed evidence that Matthew Gilbert Scott was driving under the influence of alcohol because the city police officer obtained the evidence after stopping Scott's vehicle outside the city limits. We reverse and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 29, 2007, at 1:40 a.m. in Sandpoint, Idaho, Officer Hagstrom of the Sandpoint Police Department pulled up behind Scott's pickup at a stop sign. It was snowing heavily and the roads were slick. Officer Hagstrom thought Scott excessively accelerated away from the stop sign. The pickup had weight in it and had no trouble accelerating or traveling on the snow-covered roads. Officer Hagstrom verified with radar that Scott was traveling 32 mph in

1

a 25 mph speed zone. Approximately one-eighth of a mile after Hagstrom verified that Scott was speeding, Scott left the city limits of Sandpoint. One mile beyond the city limits of Sandpoint, after Scott turned off the highway onto Syringa Road, Officer Hagstrom turned on his overhead lights and stopped Scott. During the course of the stop, Officer Hagstrom discovered Scott had a suspended driver's license and he suspected that Scott was intoxicated. Scott took a field sobriety test, which he failed, and was arrested. He also gave a breath sample to test his blood alcohol content, with results of 0.105 and 0.114. Officer Hagstrom cited Scott with driving under the influence, second offense, Idaho Code § 18-8004, and driving without privileges, I.C. § 18-8001.

Scott filed a motion to suppress the evidence of his intoxication because it was obtained outside of Officer Hagstrom's jurisdictional authority. At the hearing on Scott's motion to suppress, Officer Hagstrom testified that after he suspected Scott's vehicle was speeding, while still stopped, he first verified with radar that Scott's vehicle was speeding. He then attempted to catch up to Scott's vehicle, but he had difficulty catching up to the pickup in the snow because he was driving a rear-wheel-drive patrol car. Officer Hagstrom testified that to reduce the chances of the suspect fleeing, he was trained to wait and activate his lights only when he was close to the vehicle. He stated that Scott's vehicle was better suited for the road conditions and he did not want to activate his overhead lights from too far away and give Scott an opportunity to escape. He testified that his first opportunity to activate his overhead lights and conduct a traffic stop was when the vehicle had turned onto Syringa Road. Scott's testimony did not dispute any of the facts presented by Officer Hagstrom and, on cross-examination, Officer Hagstrom was not impeached.

Although the State argued that the officer was in fresh pursuit of Scott when he left his jurisdiction, the magistrate disagreed. The magistrate concluded that Officer Hagstrom was not in fresh pursuit but was only "following" Scott, because of the delay in stopping Scott until the vehicles were approximately one mile outside the city limits of Sandpoint. The magistrate held:

> In this case, if the officer had turned his emergency lights on while both he and the defendant's vehicle were within the city limits of Sandpoint (there was ample opportunity to do that), the officer could be fairly said to be "pursuing" the defendant and the defendant would be put on notice that he was being "pursued" and being ordered to stop his vehicle. In this case the officer did not turn on his emergency lights, nor in any other way indicate to the defendant that he was "pursuing" him and ordering him to stop, until they were approximately one mile

2

outside the city limits. The court concludes that while the officer was "following" the defendant's vehicle he was not in "pursuit" of that vehicle.

The magistrate ordered suppression of the evidence. The district court affirmed the magistrate's decision. The State appeals.

## II.

## DISCUSSION

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Over questions of law, we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

The State argues that the magistrate erred in finding that Officer Hagstrom was not in fresh pursuit of Scott before stopping him outside the Sandpoint city limits. Two provisions of the Idaho Code authorize police officers to pursue offenders of the law outside of their jurisdiction. Idaho Code § 50-209 authorizes city police officers that are in fresh pursuit to arrest the suspect outside of their jurisdiction.[1] Additionally, I.C. § 67-2337(2) provides officers in fresh pursuit the same authority outside their jurisdiction as they have inside their jurisdiction.[2]

---

[1]     Idaho Code § 50-209 provides:

   The policemen of every city, should any be appointed, shall have power to arrest all offenders against the law of the state, or of the city, by day or by night, in the same manner as the sheriff or constable. Whenever such policemen shall be in fresh pursuit of any offender against any law of the state, *including traffic infractions*, or of the city and the offense has been committed within the corporate limits of such city, such policemen, while in such fresh pursuit may go beyond the corporate or geographical limits of such city subject to the provisions of chapter 7, title 19, Idaho Code, for the purpose of making such arrest or citation. (Emphasis added.)

[2]     Idaho Code § 67-2337(2) provides:

3

While both I.C. §§ 50-209 and 67-2337(2) authorize officers to pursue a suspect beyond their jurisdiction, the sections reference chapter 7, title 19, Idaho Code, to define fresh pursuit. Idaho Code § 19-705 states:

> The term "fresh pursuit" as used in this act shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. *Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.* (Emphasis added.)

Fresh pursuit thus encompasses: (1) fresh pursuit as defined by the common law; and (2) pursuit of a suspected felon. While I.C. § 19-705 seems to cover only the pursuit of felons, both I.C. §§ 50-209 and 19-701A expand fresh pursuit to traffic infractions.

In determining whether an officer was in fresh pursuit, other jurisdictions look at factors such as: (1) whether the police acted without unnecessary delay; (2) whether the pursuit was continuous and uninterrupted, even if surveillance or knowledge of the suspect's location was interrupted; and (3) whether a close temporal relationship existed between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect. *Doolittle v. State*, 154 P.3d 350, 355-56 (Wyo. 2007) (interpreting fresh pursuit under Colorado law); *see also Poss v. State*, 305 S.E.2d 884, 886 (Ga. Ct. App. 1983) ("the critical elements characterizing

---

> All authority that applies to peace officers when performing their assigned functions and duties within the territorial limits of the respective city or political subdivisions, where they are employed, shall apply to them outside such territorial limits to the same degree and extent only when any one (1) of the following conditions exist:
>
> (a) A request for law enforcement assistance is made by a law enforcement agency of said jurisdiction.
>
> (b) The peace officer possesses probable cause to believe a crime is occurring involving a felony or an immediate threat of serious bodily injury or death to any person.
>
> (c) When a peace officer is in fresh pursuit as defined in and pursuant to chapter 7, title 19, Idaho Code.

4

'hot pursuit' are the continuity and immediacy of the pursuit, rather than merely the rate of speed at which pursuit is made"). It is not necessary that the suspect recognize he or she is being pursued. *See Vance v. State, Dep't. of Licensing*, 65 P.3d 668, 670 (Wash. App. Div. 1 2003) (rejecting a defendant's argument that fresh pursuit only applies if the suspect crosses a jurisdictional line with an attempt to avoid arrest or the knowledge that he is being pursued). The Florida case of *State v. Joy*, 637 So.2d 946, 947 (Fla. Dist. Ct. App. 1994), is illustrative of fresh pursuit. There a city police officer observed a speeding truck cross an intersection in front of him. The officer turned to follow the truck, immediately crossing into another jurisdiction. In the other jurisdiction, the officer confirmed that the truck was speeding and stopped the truck. The officer discovered the driver, Joy, was intoxicated and arrested him for, among other things, driving under the influence. The district court suppressed evidence of Joy's intoxication on the ground that the officer was improperly outside of his jurisdiction. The appellate court reversed, even though the officer entered the other jurisdiction without his lights flashing or siren on. The court ruled that the officer formulated a reasonable suspicion that Joy was speeding within the officer's jurisdiction and under the theory of fresh pursuit was justified in stopping Joy. *Id*. at 948.

All that appears to be required for the fresh pursuit exception is that the officer had knowledge that a crime or infraction was committed within the jurisdiction and the officer pursued the suspect beyond the jurisdiction with the purpose of making an arrest, citing the suspect, or investigating the offense. Whether the officer's lights are flashing and siren is blaring is objective evidence of the officer's pursuit, but it is not necessary. It is well within an officer's discretion to wait for a safe point to stop a vehicle. *Poss*, 305 S.E.2d at 886 ("Reason compels the conclusion that the doctrine of 'hot pursuit' authorized the officers to pursue appellant and to stop and arrest him at the first opportunity for doing so which was, under the circumstances, *safe* for all concerned -- appellant, the officers and other motorists.") (Emphasis in original.) For similar reasons, it is within an officer's discretion to wait to turn on his flashing lights until the risk that the suspect might flee is minimized. As I.C. § 19-705 commands, this pursuit cannot be unreasonably delayed.

According to Officer Hagstrom's testimony, he observed a traffic violation within his jurisdiction and commenced to follow Scott outside the jurisdiction in order to make a traffic stop as soon as possible. The officer activated his lights and made the traffic stop at his first

5

opportunity, considering police procedures for safely stopping suspects. There is no indication in the record that the pursuit or stop was unreasonably delayed as defined by case law. The State met its burden in demonstrating that Officer Hagstrom's stop of Scott's vehicle qualified as fresh pursuit.[3]

### III.

### CONCLUSION

The magistrate erred in holding that the stop was contrary to Idaho's fresh pursuit statute, and the district court erred in affirming the magistrate's decision. This Court reverses the district court's memorandum decision affirming the magistrate's suppression order and remands the case for further proceedings.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**

---

[3] Because we hold that Officer Hagstrom was in fresh pursuit of Scott when he stopped him, we need not decide whether suppression was the appropriate remedy.