**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 38783**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Opinion No. 59** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: November 9, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **NATHAN WADE HERREN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

Order, on intermediate appeal, affirming judgment of conviction for violation of a no contact order and affirming revocation of withheld judgment, <u>reversed</u> and <u>case remanded</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Robyn Fyffe, Boise, for appellant. Robyn Fyffe argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GUTIERREZ, Judge

Nathan Wade Herren appeals from the district court's order, on intermediate appeal, affirming his judgment of conviction entered upon the magistrate's verdict finding him guilty of violation of a no contact order and affirming the revocation of his withheld judgment based on the magistrate's finding that he was in violation of his probation. For the reasons set forth below, we reverse and remand the case.

## I.

## FACTS AND PROCEDURE

In the course of an ongoing dispute between Herren and his neighbor, William McDermott, Herren cut down a portion of McDermott's fence. Herren was charged with felony malicious injury to property and, pursuant to a plea agreement, pled guilty to an amended charge of misdemeanor malicious injury to property. The court entered a withheld judgment and placed

Herren on probation for two years. In addition, the court entered a no contact order (NCO), providing, in relevant part, that Herren could not "knowingly remain within 100 feet of" McDermott.

Months later, Herren filed a motion to modify the NCO to allow him to attend homeowners' association meetings where McDermott, an association board member, would likely be present. Herren failed to request a hearing on the motion and no modification was entered. Nevertheless, Herren attended an association meeting at a local school. When Herren first arrived, McDermott was not present, but once McDermott entered the meeting room, Herren made brief eye contact with him and moved to the back of the room. McDermott contacted law enforcement, who responded to the scene. Herren stated he believed he was more than 100 feet from McDermott. Herren was arrested for violation of the NCO after the responding officer determined Herren had been sitting well closer than 100 feet from McDermott. Herren was charged with violating the NCO, Idaho Code § 18-920, and violating his probation by committing a new crime.

Following a bench trial, the magistrate found Herren guilty of violating the NCO by knowingly remaining within 100 feet of McDermott at the meeting. The magistrate entered a judgment of conviction. Herren admitted to violating his probation by being convicted of the NCO violation, and the magistrate revoked Herren's withheld judgment for malicious injury to property. Herren timely appealed his judgment of conviction for violating the NCO and the revocation of his withheld judgment to the district court. He filed a motion to consolidate the appeals, which the district court granted. Following a hearing, the district court affirmed Herren's judgment of conviction for violating the NCO, the probation violation finding, and the revocation of his withheld judgment. Herren now appeals to this Court.

## II.

## ANALYSIS

Herren contends his judgment of conviction for violating the NCO should be vacated because the magistrate did not find he had "contact" with McDermott in violation of the NCO as required by the statute and there is insufficient evidence to support such a finding. He also contends the order revoking his withheld judgment should be reversed because the NCO conviction cannot properly form the basis of the probation violation where it was not supported by sufficient evidence.

2

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The words must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001).

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991).

Idaho Code § 18-920(2), under which Herren was convicted, provides that a violation of an NCO is committed when:

(a) A person has been charged or convicted under any offense defined in subsection (1) of this section; and

(b) A no contact order has been issued, either by a court or by an Idaho criminal rule; and

(c) The person charged or convicted *has had contact* with the stated person in violation of an order.

(Emphasis added).

In finding Herren guilty of the NCO violation, the magistrate found the State presented proof beyond a reasonable doubt that Herren violated the order by knowingly remaining within 100 feet of McDermott and, without analysis, concluded this act amounted to a violation of section 18-920(2). The district court affirmed these findings. On appeal, Herren argues the courts' conclusion that he violated section 18-920(2) by knowingly remaining within 100 feet of McDermott is erroneous because the common usage of the word "contact" in the statute dictates that the only violation of an NCO criminalized by the statute is that which involves some manner of "communication or physical touching." The State counters that section 18-920(2) "does not, and is not intended to, define the meaning of the word 'contact' for purposes of determining whether a violation of a no contact order has occurred" and any violation of a NCO suffices.

The provision in the NCO at issue states:

IT IS HEREBY ORDERED that [Herren] shall not contact (including: in person or through another person, or in writing or e-mail, or by telephone, pager or facsimile) or attempt to contact, harass, follow, communicate with, or knowingly remain within 100 feet of: [McDermott].

Thus, it is apparent that by remaining within 100 feet of McDermott during the meeting, Herren violated the NCO, which he concedes on appeal; however, the question is whether this violation of the NCO can amount to a violation of section 18-920(2).

In arguing he cannot be found to have violated section 18-920(2) because he did not have "contact" with McDermott according to the plain and ordinary meaning of the word, Herren cites to *Cooper v. Cooper*, 144 P.3d 451 (Alaska 2006). In *Cooper*, a protective order prohibited the defendant (Husband) from, among other things, being in the physical presence of his estranged wife (Wife). Based on several instances where Wife saw and made eye contact with Husband in various public places, including the mall, a bar conference and on the street, Wife claimed Husband committed the crime of violating the protective order, because, inter alia, Husband's

4

conduct amounted to "contacting," which was prohibited by the protective order. The Alaska Supreme Court noted that for a defendant to be guilty under Alaska's statute criminalizing the violation of a protective order, ALASKA STAT. § 11.56.740(a)(1),[1] the underlying protective order must contain at least one of seven prohibitions enumerated in Alaska Statutes § 18.66.100(c)(1)-(7).[2] On this basis, the Court found the statute implies that only a violation of a prohibition listed in section 18.66.100(c)(1)-(7) may constitute the crime of violating a protective order. *Cooper*, 144 P.3d at 457. The Court found it was significant that the protective order's requirement that Husband not be in the physical presence of Wife was not a prohibition explicitly listed in section 18.66.100(c)(1)-(7) and, therefore, it was questionable whether Husband's acts could form the basis of a criminal violation of the protective order.[3] *Cooper*, 144 P.3d at 457.

Important to the issue we address in this case, the *Cooper* court rejected Wife's argument that Husband's acts of appearing within Wife's sight in public places fell within one of the

---

[1]     The statute has since been amended.

[2]     Alaska Statutes § 18.66.100(c)(1)-(7) provided that a protective order may:

(1) prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment;
(2) prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner;
(3) remove and exclude the respondent from the residence of the petitioner, regardless of ownership of the residence;
(4) direct the respondent to stay away from the residence, school, or place of employment of the petitioner or any specified place frequented by the petitioner or any designated household member;
(5) prohibit the respondent from entering a propelled vehicle in the possession of or occupied by the petitioner;
(6) prohibit the respondent from using or possessing a deadly weapon if the court finds the respondent was in the actual possession of or used a weapon during the commission of domestic violence;
(7) direct the respondent to surrender any firearm owned or possessed by the respondent if the court finds that the respondent was in the actual possession of or used a firearm during the commission of the domestic violence[.]

[3]     The Court did point out that this finding did not mean the lower court was not authorized to include an "in-the-presence" prohibition in the protective order. Although such a provision could not be enforced by the criminal statute, it could be enforceable by contempt or possibly other means. *Cooper v. Cooper*, 144 P.3d 451, 457 (Alaska 2006).

5

enumerated prohibitions listed in section 18.66.100(c)(1)-(7)--specifically, subsection (c)(2) of section 18.66.100, which provides a protective order may "prohibit the respondent from . . . *contacting*, or otherwise communicating directly or indirectly with the petitioner." (Emphasis added.) *Cooper*, 144 P.3d at 457. Although recognizing the argument was not "implausible," the court rejected it on the basis that the "common usage" of "contacting," as a verb, means "physically touching or communicating." *Id.* at 457-58 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY). Noting the general rule of statutory interpretation, that words in statutes are to be construed in accordance with their normal usage unless there is some indication a special meaning is intended, the Court concluded the context of "contacting" in the relevant statute indicated that adherence to the normal meaning of the word was appropriate. *Id.* at 458. Thus, the Court held that Husband's acts of merely being present in a public place while Wife was also present, with contact limited to one or two seconds of unplanned eye contact and absent any other communication or touching, were insufficient to establish Husband violated the no contact prohibition where the statute criminalizing a violation of a protective order required the violating behavior be one of the enumerated acts. *Id.*

As we indicated above, where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction, *Burnight*, 132 Idaho at 659, 978 P.2d at 219, and the words of the statute are to be given their plain, usual, and ordinary meaning, *Hart*, 135 Idaho at 829, 25 P.3d at 852. Thus, although the State attempts to distinguish *Cooper* from the case at hand, we are constrained to conclude, based on our rules of statutory interpretation, that section 18-920(2), like Alaska's statute at the time, does not criminalize *all* violations of an NCO. As recognized by the Alaska Supreme Court in *Cooper,* and as undisputed by the State in this appeal, the "common usage" of "contacting," as a verb, means "physically touching or communicating." *Cooper*, 144 P.3d at 457-58. Thus, by its plain language, section 18-920(2) only criminalizes violations of an NCO where the violation was contact in the form of physical touching and/or communicating.

In resisting this interpretation of the statute, the State argues:

> It is apparent from a plain reading of the statute and the rule referenced therein [Idaho Criminal Rule 46.2] that the legislature did not intend to define or limit the meaning of the word contact for purposes of the content of any particular no contact order or for purposes of what will constitute a violation of the order.

6

However, although the Legislature *may* not have consciously intended to exclude the activity at issue in this case, that is exactly what it did by its choice of language, and we are constrained by adherence to our rules of statutory construction to give effect to the plain language of the statute. Indeed, there is an argument that had the Legislature intended the interpretation urged by the State, it would have stated in the statute that *any* violation of an NCO could form the basis of the offense, as opposed to explicitly requiring "contact" in violation of an NCO. *See, e.g.,* I.C. § 18-7905 (defining first degree stalking as, *inter alia*, a violation of Idaho Code § 18-7906 and where the "actions constituting the offense are in violation of a temporary restraining order, protection order, no contact order or injunction, or any combination thereof").

Here, it is undisputed the lower courts found Herren's act of knowingly remaining within 100 feet of McDermott was violative of the NCO. However, such an act does not amount to physical touching and/or communicating (a point the State does not contest) and, thus, cannot be considered "contact" pursuant to section 18-920(2). Accordingly, we conclude the State failed to sustain its burden of proving each element of the offense beyond a reasonable doubt because there was no evidence Herren had "contact" with McDermott in violation of the NCO as required by the plain language of the statute. Because the magistrate's finding that Herren violated probation was premised upon this conviction, which in turn caused the magistrate to revoke Herren's withheld judgment, the order revoking Herren's withheld judgment on this basis must be reversed. The district court's order, on intermediate appeal, affirming Herren's judgment of conviction for violation of an NCO and affirming revocation of Herren's withheld judgment is reversed, and the case is remanded for proceedings consistent with this opinion.[4]

Judge MELANSON **CONCURS.**

Chief Judge GRATTON, **DISSENTING**

I respectfully dissent. I believe that the term "contact" in the context of the legal prohibition, i.e., "no contact," is well understood and consistent with the use of the term in Idaho Code § 18-920(2)(c). I submit that the plain meaning of "contact" to anyone involved in the context of a no contact order (as opposed to say the business world) includes being in the vicinity

---

[4] We note that although Herren's conduct of knowingly remaining within 100 feet of McDermott may not form the basis of a violation of Idaho Code § 18-920(2), it may nonetheless constitute a violation of the NCO and still be a violation of his probation, depending on the terms of probation. Therefore, revocation of Herren's withheld judgment may still be appropriate.

of the other person. I further submit that the term "contact" is, by virtue of the statutory language in I.C. § 18-920 and Idaho Criminal Rule 46.2, defined as that which is set out in the no contact order itself, which must include a distance restriction. The majority, unfortunately, limits itself to a generic definition of the word "contact" without regard to the legal and commonly understood context of "no" contact orders.

I do not believe it is appropriate that when our standards of statutory construction call for application of the plain meaning of a word, that we immediately consult Webster's Dictionary. The plain meaning of a word is as commonly understood and articulated within the context used, not some generic Webster's Dictionary definition. This case highlights just how we should not rely on one of Webster's Dictionary's several definitions of "contact." Herren argues that "contact" means "physical touching or communicating." Herren and the majority adopt this definition of "contact" from *Cooper v. Cooper*, 144 P.3d 451, 457-58 (Alaska 2006), which, in turn, purportedly adopted the definition from Webster's Dictionary.[1] Since there is no physical touching in this case, Herren and the majority then are required to delve into what is meant by "communicating." Herren argues and the majority agrees that being in someone's presence is not communicating and, moreover, brief eye *contact* is not communicative and, thus, not contact, so long as there is no non-verbal communication involved with the eye contact, which I suppose to mean the old evil eye. So, "contact" actually becomes "communicating" and then we are required to define "communicating," and so on. Through this circuitous route the majority determines that knowingly being in another's presence is not "contact" within the meaning of I.C. § 18-920(2)(c), because there is no touching or communicating.

Idaho Code § 18-920, under which Herren was prosecuted, is entitled: "Violation of *No Contact Order*." (Emphasis added.) Subsection (2) states:

> (2) A violation of a *no contact order* is committed when:
> (a) A person has been charged or convicted under any offense defined in subsection (1) of this section; and
> (b) A *no contact order* has been issued, either by a court or by an Idaho criminal rule; and

---

[1] The phrase "physical touching or communicating" does not appear in Webster's Third New International Dictionary, and, instead, appears to be the Alaska Court's amalgam of words found therein.

(c) The person charged or convicted has had *contact* with the stated person *in violation of an order*.

(Emphasis added.) To say that the term "contact" in I.C. § 18-920(2)(c) does not draw meaning from the "*no contact order*" is untenable. Idaho Criminal Rule 46.2, entitled "[n]o contact orders," states that no contact orders issued pursuant to I.C. § 18-920 must be in writing and served on the defendant. Each judicial district shall adopt by administrative order a form for no contact orders. The rule further provides that:

No contact orders must contain, at a minimum, the following information:
(1) The case number, defendant's name and victim's name;
(2) *A distance restriction*;
(3) That the order will expire at 11:59 p.m. on a specific date, or upon dismissal of the case;
(4) An advisory that:
(a) *A violation of the order* may be prosecuted as a separate crime under I.C. § 18-920 for which no bail will be set until an appearance before a judge, and the possible penalties for this crime, . . . .

I.C.R. 46.2(a). (Emphasis added.) It is clear from the full statute that that the "contact" which is "in violation of [the] order," identified in I.C. § 18-920(2)(c), is that which is set out in the order. It is clear from the rule that the "contact" which is punishable by I.C. § 18-920 is that which is set out in the order. It is also clear from the required language in the no contact order itself, which includes an advisory that violation of the order may be prosecuted under I.C. § 18-920, that it is the "contact" described in the order which is punishable under I.C. § 18-920. One need not resort to Webster's Dictionary to determine what "contact" means in the context of a no contact order. If fact, the Webster's Dictionary definition, presents much more confusion and less certainty than the language of the order which must be served on the defendant.

In this case, Herren does not seriously contest that he knowingly remained with 100 feet of McDermott in violation of the no contact order. Thus, I respectfully dissent.

9