952 P.2d 402

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John W. HARMON, Defendant–Appellant.**

**No. 23361.**

Court of Appeals of Idaho.

Jan. 30, 1998.

R. Brad Masingill, Weiser, for Defendant–Appellant.

Alan G. Lance, Attorney General, Catherine O. Derden, Deputy Attorney General, Boise, for Plaintiff–Respondent.

LANSING, Chief Judge.

Appellant John W. Harmon was detained on suspicion of driving under the influence of alcohol and was asked to submit to a blood alcohol concentration (BAC) test. He initially refused, but the police officer continued to urge Harmon to take the test, and he then relented. Before the trial court, Harmon unsuccessfully sought suppression of the BAC test results and dismissal of the charge. On appeal, he contends that the officer's conduct in persuading Harmon to submit to the test violated Harmon's Fifth Amendment privilege of self-incrimination, the Fourth Amendment guaranty against unreasonable searches and seizures, and his Sixth Amendment right to counsel, and that the police wrongfully disposed of exculpatory evidence. Harmon also maintains that the trial court's findings and conclusions on the suppression motion are inadequate.

## FACTS AND PROCEDURE

While on patrol, Payette City police officer Dan Ziegler observed John Harmon speeding and pulled him over. When officer Ziegler approached Harmon to request his driver's license and registration, he noticed that Harmon appeared to be intoxicated. Harmon also smelled of alcohol and admitted that he had been drinking. After Harmon failed several field sobriety tests, officer Ziegler took him to the sheriff's office and asked him to take a breathalyzer test to determine the alcohol concentration in his blood. Either in the patrol car or at the sheriff's office, Harmon asked if he could speak to an attorney. Officer Ziegler responded that he would have to wait until he completed the BAC. The officer then read Harmon an advisory form based on I.C. § 18–8002 describing the consequences of a refusal to take the test, including the likely suspension of Harmon's driver's license. Harmon declined the test and signed the advisory form on a line indicating his refusal. Officer Ziegler persisted, however, telling Harmon that it would probably be in Harmon's best interest to take the test because if he did not, his license would be suspended. Harmon then agreed to the test, and the officer discarded the original form which documented Harmon's refusal.

Harmon signed a new form indicating compliance. The test samples showed a blood alcohol concentration of .22 and .23, and Harmon was charged with driving under the influence of alcohol (DUI), I.C. § 18–8004.

Prior to trial, Harmon filed a motion to suppress the results of the BAC test. He argued that by encouraging Harmon to submit to the test after he had refused, officer Ziegler unconstitutionally tricked Harmon into withdrawing his initial refusal, that Harmon's Sixth Amendment right to counsel and his Fifth Amendment privilege against self-incrimination were violated. Harmon also moved for dismissal of the DUI charge on the ground that officer Ziegler violated Harmon's due process rights by throwing away the original refusal form. The magistrate denied the motion. Harmon was granted a stay of the proceedings in order to appeal the matter to the district court. The district court affirmed the magistrate's decision.

On further appeal to this Court, Harmon reasserts his arguments for suppression of the breath test and also argues that the magistrate committed reversible error by delegating the drafting of his findings of fact and conclusions of law to the prosecutor.

## ANALYSIS

### A. The Magistrate's Adoption of the Findings and Conclusions Prepared by the Prosecutor

■ At the conclusion of the evidentiary hearing on Harmon's suppression motion, the magistrate ruled from the bench. Regarding the officer's statements to Harmon after Harmon's initial refusal of the breathalyzer, the magistrate said only, "I can't find where the officer was wrong in the words that he used at that time after the refusal of the test. I can't find that he violated the defendant's rights." Harmon's attorney then requested that the court issue written findings of fact. It appears that the magistrate thereafter directed the prosecutor to draft findings of fact and conclusions of law and that the magistrate signed, without modification, the draft prepared by the prosecutor. Harmon argues that this procedure violated I.C.R. 12(e), which requires a trial court to make

**84**

findings of fact upon the request of either party.

Harmon is correct in asserting that the magistrate's pronouncement from the bench was wholly inadequate as findings of fact. He also correctly points out that the practice of having one party prepare findings and conclusions, which are then adopted verbatim by the trial court, is strongly disfavored. *See Matheson v. Harris,* 98 Idaho 758, 762, 572 P.2d 861, 865 (1977); *Compton v. Gilmore,* 98 Idaho 190, 193, 560 P.2d 861, 864 (1977); *MH & H Implement, Inc., v. Massey–Ferguson, Inc.,* 108 Idaho 879, 881, 702 P.2d 917, 919 (Ct.App.1985); *Pline v. Asgrow Seed Co.,* 102 Idaho 827, 832, 642 P.2d 64, 69 (Ct.App.1982). Idaho Criminal Rule 12(e) provides, "When the [sic] factual issues are involved in the determination of a motion, the court, upon the request of any party, shall make its findings thereon." In *Compton,* the Idaho Supreme Court explained that the purpose of the corresponding civil rule, I.R.C.P. 52(a), is to provide "an aid to the appellate court by placing before it the basis of the decision of the trial court; *to require care on the part of the trial judge in his consideration and adjudication of the facts;* and for the purposes of res judicata and estoppel by judgment." *Compton,* 98 Idaho at 193, 560 P.2d at 864 (quoting *Mora v. Martinez,* 80 N.M. 88, 451 P.2d 992, 993–94 (1969)). A court's delegation to one party of the task of preparing findings and conclusions, or a court's wholesale adoption of one party's draft risks undermining the litigants' confidence in the outcome of their case and in the integrity of the judicial process in general. Hence, we do not endorse the magistrate's practice here.

This failing in the procedures below does not, however, constitute reversible error *per se. MH & H Implement,* 108 Idaho at 881, 702 P.2d at 919. Rather, "findings of fact supported by the evidence and conclusions of law correctly applying legal principles to the facts found will be sustained on appeal regardless of their source." *Id.* at 881–82, 702 P.2d at 919–20. *See also Cheney v. Jemmett,* 107 Idaho 829, 831–32, 693 P.2d 1031, 1033–34 (1984); *Marshall Bros., Inc., v. Geisler,* 99 Idaho 734, 737, 588 P.2d 933, 936 (1978); *Seaport Citizens Bank v. Dippel,* 112 Idaho 736, 741, 735 P.2d 1047, 1052 (Ct.App. 1987).

We conclude that the record here provides ample support for the magistrate's findings. Therefore, we will proceed to address the issues raised by Harmon, applying governing law to the facts as found by the magistrate. Because Harmon raises constitutional issues, we accept the trial court's findings of fact where supported by substantial evidence, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Carr,* 123 Idaho 127, 129, 844 P.2d 1377, 1379 (Ct.App.1992); *State v. Shepherd,* 118 Idaho 121, 122, 795 P.2d 15, 16 (Ct.App.1990).

**B. The Fifth Amendment Privilege Against Self-incrimination**

Harmon asserts that because he was not given *Miranda* warnings before he consented to the breathalyzer test, the administration of the test violated his Fifth Amendment privilege against self-incrimination. The necessary remedy, he asserts, is suppression of the test results. We conclude, however, that the privilege against self-incrimination and *Miranda* rights are not implicated by the administration of a breath test.

The *Miranda* requirement that an accused be informed of the right to remain silent and the right to counsel before custodial interrogation was imposed by the United States Supreme Court in order to safeguard the accused's Fifth Amendment privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This privilege protects the accused only from compulsion to give testimony against himself or to otherwise provide "evidence of a testimonial or communicative nature." *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). In *Schmerber,* the United States Supreme Court held that a state-compelled blood test to determine alcohol concentration is physical evidence, not testimony or a communicative act, and therefore is unprotected

by the Fifth Amendment privilege. *Id.,* at 760–65, 86 S.Ct. at 1830–33. Moreover, in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Supreme Court stated, "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*" *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15.

█ Accordingly, Harmon's breath test results are admissible, notwithstanding the lack of *Miranda* warnings, because they are not testimonial or communicative evidence and because the officer's request for the test was not an interrogation.

## C. The Fourth Amendment Right to be Free From Unreasonable Searches and Seizures

Harmon next argues that the BAC test should be suppressed as the product of an unconstitutional search and seizure. He asserts that Officer Ziegler violated the Fourth Amendment proscription against unreasonable searches and seizures when he told Harmon that it would be in Harmon's best interest to take the BAC test. According to Harmon, this amounted to "legal advice" from the officer on which Harmon relied in submitting to the test.

█ The Fourth Amendment to the United States Constitution guarantees "The right of the people to be secure in their persons ... against unreasonable searches and seizures." The administration of a blood test or breath test to determine alcohol concentration is a seizure of the person and a search for evidence, and therefore falls within the purview of this amendment. *Schmerber, supra; State v. Woolery,* 116 Idaho 368, 775 P.2d 1210 (1989); *State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984). Warrantless searches or seizures are presumptively unreasonable unless they come within one of several judicially recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Woolery,* 116 Idaho at 370, 775 P.2d at 1212. Such exceptions include searches that are conducted with consent. *State v.*

*Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App.1993); *State v. Rusho,* 110 Idaho 556, 558, 560, 716 P.2d 1328, 1330, 1332 (Ct. App.1986). Hence, police may properly perform a warrantless search if prior consent has been obtained.

█ Harmon is deemed to have consented to an evidentiary test for alcohol concentration by application of I.C. § 18–8002(1). That statute provides that:

> Any person who drives or is in actual physical control of the motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol .... provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that the person has been driving or in actual physical control of a motor vehicle in violation of [Idaho's DUI statutes].

Thus, under Section 18–8002, "anyone who accepts the privilege of operating a motor vehicle upon Idaho's highways has consented in advance to submit to a BAC test...." *In re McNeely,* 119 Idaho at 187, 804 P.2d at 916. *See also In re Goerig,* 121 Idaho 26, 29, 822 P.2d 545, 548 (Ct.App.1992). It follows that where reasonable grounds for the request exists, and the test is conducted in a reasonable manner, a motorist has no legal right to refuse an alcohol concentration test. Even if the officer did not notify the defendant of the consequences of the refusal as required by I.C. § 18–8002(3), the results of the evidentiary test will be admissible in a criminal prosecution. *Woolery, supra; Burris,* 125 Idaho at 291, 869 P.2d at 1386. Harmon contends, however, that officer Ziegler's conduct vitiated Harmon's statutorily implied consent and rendered the test unreasonable within the meaning of the Fourth Amendment.

We do not entirely rule out the possibility that a search conducted pursuant to statutory consent could be rendered unreasonable for Fourth Amendment purposes if the search were accomplished by trickery or deceit amounting to police misconduct. We do not, however, view the officer's actions here as rising to that level. After Harmon initially refused to take the test, the officer stated

that it would be in Harmon's best interest to do so because a refusal would result in the suspension of his driver's license. Officer Ziegler's statement of the legal consequence of the refusal was not a misstatement of the law, *see* I.C. § 18–8002(4)(a), but was a reiteration of the warning of a license suspension included within the advisory form that had previously been read to Harmon. The officer did not tell Harmon that he had to take the test, nor did he threaten Harmon with physical harm. Although Harmon complains that Ziegler's comment that taking the test would be in Harmon's "best interest" amounted to legal advice, it does not appear that Harmon was misled into thinking that the officer was acting in any capacity other than as a police officer enforcing the implied consent statute. At the suppression hearing, Harmon admitted that at the time of his detention he knew that if he "blew" over a .10, "you're guilty .... you're under arrest for DUI basically." By his own admission, he understood that the results of the test might be inculpatory and could be used against him in a DUI prosecution. We hold, therefore, that officer Ziegler's comment did not render Harmon's statutorily implied consent to the BAC test ineffective for Fourth Amendment purposes.

## D. Sixth Amendment Right to Counsel

 Harmon next argues that he was denied his Sixth Amendment right to counsel. As noted above, Harmon asked to speak with an attorney before the breath test was administered, but was told that he would have to wait until the advisory form for the test had been read to him. That advisory form informed Harmon that he did not have a right to consult with an attorney in advance of the test. Harmon acknowledges that he was not entitled to speak with an attorney before deciding whether to accede to the police officer's request to take the breathalyzer test, but he argues that the right attached immediately after Harmon initially refused the test. Thus, according to his argument, he should have been allowed to contact an attorney as soon as he refused the

test, and his subsequent consent to take the test was obtained in violation of his right to counsel.

 The Sixth Amendment assurance of the right to assistance of counsel in criminal prosecutions applies at any "critical stage of the prosecution." *United States v. Wade,* 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967). In *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, (1972), the Supreme Court established that this right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated." *Id.,* at 688, 92 S.Ct. at 1881.

Harmon's assertion that the period of his discussion with Officer Ziegler concerning whether to take the BAC was a "critical stage of the prosecution" has been previously resolved by this Court. In *In re McNeely,* 119 Idaho 182, 804 P.2d 911 (Ct.App.1990), this Court held:

> [T]esting for BAC under the implied consent statute is an evidentiary procedure and, as in this case, is conducted before formal criminal charges are initiated by the filing of a complaint. Therefore, the testing procedure does not constitute a "critical stage" of the underlying criminal proceedings for DUI.
>
> Second, we note that under the implied consent statute, anyone who accepts the privilege of operating a motor vehicle upon Idaho's highways has consented in advance to submit to a BAC test without the right to consult with counsel.[1] ...
>
> We therefore hold that a licensee required to submit to a BAC test under the implied consent statute has no constitutional right to consult with counsel prior to taking that test.

*Id.* at 187, 804 P.2d at 916 (citations omitted). Subsequently, in *State v. Shelton,* 129 Idaho 877, 934 P.2d 943 (Ct.App.1997), we addressed an appellant's argument that he had a right to counsel immediately following the

---

1. That portion of the implied consent statute to which the court was referring in *McNeely* is I.C. § 18–8002(2), which provides:

(2) Such person shall not have the right to consult with an attorney before submitting to such evidentiary testing.

BAC test. The Court rejected the argument, stating:

> The Sixth Amendment right to counsel attaches at or after the time that adversarial judicial proceedings have been initiated. The commencement of the criminal prosecution, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment, marks the "critical stage" of the prosecution to which the guarantees of the Sixth Amendment are applicable.
>
> . . . .
>
> [B]ecause the period of time at issue does not constitute a "critical stage" in a criminal proceeding, Shelton's right to counsel was not violated inasmuch as he was advised of this right at the arraignment.

*Id.* at 880–81, 934 P.2d at 947–47.

Under these authorities, Harmon's Sixth Amendment right to counsel did not attach until criminal prosecution against him was initiated. The citation by which Harmon was charged with DUI was not filed or served until after he took the BAC test. Therefore, he had no Sixth Amendment right to counsel during the period between his initial refusal of the BAC test and his ultimate decision to submit to the procedure.

### E. Destruction of the Original Consent Form

▮▮ Lastly, Harmon argues that the charges against him should be dismissed because officer Ziegler threw away the initial advisory form on which Harmon had indicated his refusal to take the BAC test. Harmon contends that officer Ziegler violated the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds that the Fourteenth Amendment right to due process requires that the prosecution disclose to an accused all material exculpatory evidence. *See also United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984);

*State v. Gardner,* 126 Idaho 428, 885 P.2d 1144 (Ct.App.1994).

▮▮ We find this argument meritless because the consent form was not exculpatory. For purposes of evaluating a claimed *Brady* violation, evidence is exculpatory if it "tends to clear an accused of alleged guilt, excuses the actions of the accused, or tends to reduce punishment." *State v. Johnson,* 120 Idaho 408, 411, 816 P.2d 364, 367 (Ct.App.1991). The parties here agree that the discarded form showed that Harmon initially refused officer Ziegler's request that he take the breathalyzer test. The form was merely a means of documenting that Harmon had been informed of the consequences of his refusal under I.C. § 18–8002. It has no relevance to whether Harmon was guilty of DUI. Harmon has not shown that the destruction of the form prejudiced him in any way, or that preservation of the form could have altered the outcome of the suppression hearing or of any other aspect of the criminal action. Therefore, the magistrate correctly rejected Harmon's request for dismissal of the DUI charge on the basis of a *Brady* violation.

### CONCLUSION

▮▮ We have determined that, although the magistrate's wholesale adoption of findings and conclusions drafted by the prosecutor was inappropriate, the findings are supported by substantial evidence and therefore will not be set aside on appeal. We have held that Harmon's Fifth Amendment right against self-incrimination was not infringed by the absence of *Miranda* warnings before he took the BAC test, that the officer's statements to induce Harmon to take the BAC test did not violate the Fourth Amendment proscription against unreasonable searches and seizures, that Harmon had no Sixth Amendment right to counsel before taking the test, and that the Fourteenth Amendment guarantee of due process was not infringed by the officer's disposal of the advisory form on which Harmon indicated his initial refusal of the test.[2]

---

2. In his statement of issues in his appellant's brief, Harmon also asserted that the BAC test violated Art. I, §§ 13 and 17 of the Idaho Constitution. Because Harmon has not presented any argument or authority that a greater scope of protection is afforded by Art. I, §§ 13 and 17

Accordingly, the magistrate's denial of Harmon's motion to suppress the BAC test and the magistrate's denial of the motion for dismissal of the charge are affirmed.

PERRY and SCHWARTZMAN, JJ., concur.

than by the corresponding provisions of the United States Constitution, we do not separately address the state constitution *See State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *Martinez v. State*, 130 Idaho 530, 535, 944 P.2d 127, 132 (Ct.App.1997).