IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37191

| STATE OF IDAHO, | ) | 2010 Opinion No. 74 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 5, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TONI M. LeCLERCQ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County.  Hon. Robert J. Elgee, District Judge.  R. Ted Israel, Magistrate.

Order of the district court affirming the magistrate's order denying motion to suppress, affirmed.

Brian E. Elkins, Ketchum, for appellant.  Brian E. Elkins argued.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

_____

GRATTON, Judge

Toni M. LeClercq appeals from the judgment entered upon her conditional plea of guilty to misdemeanor driving under the influence, Idaho Code §§ 18-8004 and 18-8005(1).  LeClercq challenges the order denying her motion to suppress evidence.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On September 13, 2008, Idaho State Patrol Trooper Travis DeBie stopped LeClercq for speeding on Highway 75, north of Hailey in Blaine County, Idaho, at approximately 11:18 p.m. Trooper DeBie stated that LeClercq did not pull over immediately, that she crossed a double yellow line, and that she only stopped after he activated his siren.  When he approached the vehicle, LeClercq did not immediately notice him, and he had to tap on the passenger window to get her attention.  Trooper DeBie testified that LeClercq initially seemed disoriented and could not roll down the window, so he asked if she would open the door.  When she opened the door,

1

Trooper DeBie could smell a strong odor of alcohol coming from inside the vehicle. Trooper DeBie also testified that LeClercq's speech was extremely slurred and that she had glassy and bloodshot eyes. Trooper DeBie asked LeClercq how much she had to drink, and she responded "not that much." She later admitted to drinking two glasses of wine. LeClercq submitted to field sobriety tests, failing both the horizontal gaze nystagmus test and the one-leg stand. LeClercq did not perform the walk and turn test due to a leg injury.[1] LeClercq was then arrested for driving under the influence.

Trooper DeBie explained to LeClercq that he intended to use a portable breath machine, an Alco Sensor III, to test her alcohol concentration level. He read the standard advisory form and waited for fifteen minutes before administering the test. During this time, LeClercq asked, a number of times, about her ability to refuse the test. Trooper DeBie advised her that if she did not submit to a breath test, he would take her to the hospital for a "forced" blood draw. LeClercq submitted to the breath test, which indicated an alcohol concentration level of .141/.143 percent. LeClercq was ultimately charged with misdemeanor DUI. She filed a motion in limine and an amended motion in limine and/or motion to suppress the breath alcohol testing evidence, which was denied. She entered a conditional guilty plea, reserving the right to appeal the magistrate's decision denying her motion to suppress. The district court, sitting in its appellate capacity, affirmed the magistrate's decision. This appeal followed.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

---

[1] Trooper DeBie testified that he did not believe the leg injury would hinder her performance of the one-leg stand.

LeClercq argues, obliquely, that the breath test should be suppressed as the product of an unreasonable search and seizure. LeClercq also argues that the officer's actions were a violation of I.C. § 18-8002. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The administration of a blood alcohol test constitutes a seizure of the person and a search within the purview of the Fourth Amendment to the United States Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007); *DeWitt*, 145 Idaho at 711-712, 184 P.3d at 217-18. Searches and seizures performed without a warrant are presumptively unreasonable. *Diaz*, 144 Idaho at 302, 160 P.3d at 741; *DeWitt*, 145 Idaho at 712, 184 P.3d at 218. To overcome the presumption, the State bears the burden of establishing two prerequisites. *Id.* First, the State must prove that a warrantless search fell within a well-recognized exception to the warrant requirement. *Id.* Second, the State must show that even if the search is permissible under an exception to the warrant requirement, it must still be reasonable in light of all of the other surrounding circumstances. *Id.*

Valid consent is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Diaz*, 144 Idaho at 302, 160 P.3d at 741. Under Idaho's implied consent statute, I.C. § 18-8002(1), "[a]ny person who drives or is in actual physical control" of a vehicle is deemed to have impliedly consented to evidentiary testing for alcohol at the request of a peace officer who has reasonable grounds to believe the person was driving under the influence.[2] *Diaz*,

---

[2] Idaho Code § 18-8002(1) reads as follows:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such

3

144 Idaho at 302, 160 P.3d at 741; *DeWitt*, 145 Idaho at 712, 184 P.3d at 218. In other words, "[b]y virtue of this statute, anyone who accepts the privilege of operating a motor vehicle upon Idaho's highways has consented in advance to submit to a BAC test." *DeWitt*, 145 Idaho at 712, 184 P.3d at 218 (quoting *State v. Rodriguez*, 128 Idaho 521, 523, 915 P.2d 1379, 1381 (Ct. App. 1996) (internal quotations omitted)).

LeClercq does not argue that she was not in control of the vehicle or that Trooper DeBie lacked reasonable grounds to suspect that she was driving under the influence. Nevertheless, LeClercq maintains that there is a beginning and an end to the implied consent "evidentiary procedure," and that this procedure, or "implied consent phase," begins with the pretest procedures, including the fifteen-minute observation period and notification of the information contained in I.C. § 18-8002(3). She contends that during this "phase," the evidentiary procedures are strictly limited to the information that can be conveyed from I.C. §§ 18-8002 and 18-8002A, and that the language in the statute cannot be modified, or amplified, by a police officer's statements.

Idaho Code § 18-8002(3)[3] provides:

> At the time evidentiary testing for concentration of alcohol . . . is requested, the person shall be informed that if he refuses to submit to or if he fails to complete, evidentiary testing:
>> (a) He is subject to a civil penalty of two hundred fifty dollars ($250) for refusing to take the test;
>> (b) His driver's license will be seized by the peace officer and a temporary permit will be issued; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose driver's license or permit has already been and is suspended or revoked because of previous violations, and in no instance shall a temporary permit be issued to a driver of a commercial vehicle who refuses to submit to or fails to complete an evidentiary test;

---

testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, or section 18-8006, Idaho Code.

[3]    This section was amended in 2009, adding a new subsection (3)(e) regarding participation in drug court and making some redesignations. At the time of this incident, however, the statute provided as set forth below.

4

> (c) He has the right to request a hearing within seven (7) days to show cause why he refused to submit to, or complete evidentiary testing;
>
> (d) If he does not request a hearing or does not prevail at the hearing, the court shall sustain the civil penalty and his driver's license will be suspended absolutely for one year if this is his first refusal and two (2) years if this is his second refusal within ten (10) years; and
>
> (e) After submitting to evidentiary testing he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

The magistrate made the following findings:

> [T]he Defendant asked three times if she could refuse the test. The first time, Trooper DeBie told her to first listen to the advisory form. The second time he told her "You can refuse, but I would take you to the hospital and we would do a forced blood draw" and went on to explain that Idaho state law said he could forcibly take her blood if she did not submit to the breath sample because of the implied consent law. The third time, he again stated that he would take her to the hospital for blood; that she would receive a refusal; and that her license would be lost for one year.

LeClercq does not contend that Trooper DeBie failed to inform her of the consequences of refusing or failing to complete an evidentiary test. Nor does she argue that he failed to wait the requisite fifteen minutes before administering the test. Rather, LeClercq's argument is based upon the premise that because Idaho's implied consent law does not contain language authorizing police officers to advise that blood will be forcibly drawn if a driver refuses to submit to a breath test, Trooper DeBie's statement that blood would be forcibly drawn was coercive in light of his deviation from the statutory language, as well as having made the statement before LeClercq had decided whether or not she would refuse or comply with the evidentiary test, although after reading the advisory form. LeClercq argues that if a driver does submit to a breath test under these circumstances, i.e. by threat of a forced blood draw, the driver's implied consent is not based upon what the statute requires and, as such, the breath test is obtained in violation of the statute, the driver's due process rights, and through coercion.

LeClercq's arguments misapprehend the statutory scheme of Idaho's implied consent law, as well as the case law interpreting that statutory scheme. In Idaho, implied consent is based upon an individual's choice to accept the privilege of operating a motor vehicle upon Idaho's highways, *see DeWitt*, 145 Idaho at 712, 184 P.3d at 218, provided that evidentiary testing is administered by a peace officer with reasonable grounds for suspicion of DUI. *See* I.C.

5

§ 18-8002(1). It is not, as LeClercq suggests, based upon the required warnings set forth in I.C. § 18-8002(3). Whether or not a police officer gives the required warnings bears nothing on the issue of consent. *See DeWitt*, 145 Idaho at 714, 184 P.3d at 220 (even if the defendant is not notified of the consequences of refusal as required by I.C. § 18-8002(3), the results of the evidentiary test are admissible in a criminal prosecution); *State v. Burris*, 125 Idaho 289, 292, 869 P.2d 1384, 1387 (Ct. App. 1994) (consent is not vitiated even if defendant is not informed of the consequences of refusal under I.C. § 18-8002(3)). The failure to advise a suspect of the consequences of refusal would be significant only with regard to the administrative suspension of the suspect's license following a refusal. *DeWitt*, 145 Idaho at 714 n.4, 184 P.3d at 220 n.4. Idaho courts have long held that a driver has no legal right to resist or refuse evidentiary testing. *Id.* at 713, 184 P.3d at 219. Summarizing the Idaho Supreme Court's reasoning in *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), this Court stated in *DeWitt*: "The [*Woolery*] Court noted that in recognition of the driver's *physical ability* to refuse to submit [to evidentiary testing], the legislature enacted the license suspension statute to discourage and civilly penalize such a refusal." *DeWitt*, 145 Idaho at 713, 184 P.3d at 219 (emphasis in original). In other words, while a driver has the physical ability to refuse to submit to an evidentiary test, because there is no legal right to resist or refuse, there is no ability to revoke consent. *See Woolery*, 116 Idaho at 371-74, 775 P.2d at 1213-16; *DeWitt*, 145 Idaho at 713-14, 184 P.3d at 219-20.

LeClercq acknowledges that there is case law "that suggest[s] that a police officer's failure to properly convey the mandatory language in Idaho Code § 18-8002 to the driver, does not require the exclusion of evidence." As noted above, the cases do not *suggest*, but rather *explicitly state* that the results of an evidentiary test will be admissible regardless of whether an officer fails to convey the statutory language. However, LeClercq claims that Idaho appellate courts have not addressed the precise issue raised in this appeal. She further argues that language in *State v. Harmon*, 131 Idaho 80, 85, 952 P.2d 402, 407 (Ct. App. 1998), allows for such an issue to be raised, where the Court stated that it would not "entirely rule out the possibility that a search conducted pursuant to statutory consent could be rendered unreasonable" based upon improper police conduct.[4]

---

[4] LeClercq also argues that her "theory takes on more validity" in light of *State v. Carr*, 128 Idaho 181, 911 P.2d 774 (Ct. App. 1995), and *State v. Madden*, 127 Idaho 894, 908 P.2d 587 (Ct. App. 1995). LeClercq relies upon these cases to support her contention that the breath test

While LeClercq attempts to rely upon *Harmon*, she does not distinguish, or even address, any of the facts of that case. In *Harmon*, the defendant was pulled over for speeding. When the police officer approached Harmon, he noticed that Harmon appeared to be intoxicated. Harmon failed several field sobriety tests, and the officer took him to the sheriff's office where he asked Harmon to submit to a breathalyzer test. The officer read the advisory form describing the consequences of a refusal, including the possible suspension of Harmon's driver's license. Harmon declined the test and signed the advisory form on a line indicating his refusal. The officer persisted, however, telling Harmon that it would be in his best interest to take the test because if he did not, his license would be suspended. Harmon agreed to the test and signed a new form indicating his compliance. Harmon argued that the officer's conduct vitiated his statutorily implied consent and rendered the test unreasonable within the meaning of the Fourth Amendment. *Harmon*, 131 Idaho at 85, 952 P.2d at 407. Based upon these facts and presented with this specific argument, the *Harmon* Court stated:

> We do not entirely rule out the possibility that a search conducted pursuant to statutory consent could be rendered unreasonable for Fourth Amendment purposes if the search were accomplished by trickery or deceit amounting to police misconduct. We do not, however, view the officer's actions here as rising to that level.

*Harmon*, 131 Idaho at 85, 952 P.2d at 407. The Court noted that the officer's statement regarding the legal consequence of the refusal was not a misstatement of the law, and that the officer did not tell Harmon that he had to take the test or threaten him with physical harm. *Id.* at 86, 952 P.2d at 408. Thus, the Court concluded that the officer's comment did not render Harmon's statutorily implied consent to the BAC test ineffective for Fourth Amendment purposes. *Id.*

should be suppressed. She contends that because they address the right of a driver to seek an independent evidentiary test once the administration of the BAC testing is completed, there is a "phase" where the evidentiary procedures are limited and governed by I.C. § 18-8002, and that a violation of that statute requires suppression. *Madden* addressed the statutory provision relating to an independent BAC test, and *Carr* addressed due process concerns with respect to the same issue, as the defendant failed to assert her statutory right in that case. Neither case is applicable here, nor do they stand for the proposition of a procedural "phase" or that suppression is required in a case such as this.

7

As quoted above, the magistrate found that LeClercq asked three times regarding the ability to refuse the breath test. The DVD of this incident supports the magistrate's findings of fact. As in *Harmon*, Trooper DeBie did not misstate the law or physically threaten LeClercq in any way. In each instance, Trooper DeBie was responding to LeClercq's queries regarding her options. He simply informed her of those options and stated his intention should she choose to refuse the breath test. At LeClercq's third inquiry regarding whether she "could say no," Trooper DeBie responded, "You know what, you can say no, but we will take you to the hospital and we will take blood from you. But yeah, you can say no, but it's counted as a refusal and your license will be suspended for a year--that's your decision." At the hearing on the motion to suppress, Trooper DeBie testified that he was not trying to threaten or coerce LeClercq into providing a breath sample, but that he was "trying to explain the situation." He stated that "[e]specially for somebody who hasn't been in a situation like this, I like to explain everything to them." He further testified that he did in fact intend to obtain a blood sample if LeClercq refused the breath test.

LeClercq attempts to rely upon *Harmon* solely for its language stating that there is a "*possibility* that a search conducted pursuant to statutory consent *could be* rendered unreasonable." *Harmon*, 131 Idaho at 85, 952 P.2d at 407 (emphasis added). As noted, *Harmon* states it is possible that a search conducted pursuant to statutory consent could be rendered unreasonable "*if* the search were accomplished by trickery or deceit amounting to police misconduct." *Harmon*, 131 Idaho at 85, 952 P.2d at 407 (emphasis added). LeClercq does not assert that Trooper DeBie engaged in trickery or deceit, nor does the record support such a finding. Indeed, Trooper DeBie informed LeClercq of his intention to obtain a blood draw, which he was entitled to obtain, if she refused to give a breath sample. *See Diaz*, 144 Idaho at 302-303, 160 P.3d at 741-42. LeClercq acknowledges that a police officer may obtain a blood draw upon a defendant's refusal to submit to a breath test. She maintains, however, that informing a driver of this intention before the driver has actually refused amounts to coercion and renders a driver's implied consent involuntary.

Assuming, for purposes of LeClercq's argument, that an officer's statement, informing a suspect of the intention to obtain a blood draw if the driver refuses a breath test, could render a driver's implied consent involuntary, LeClercq has not demonstrated that her consent was the result of coercion. Where an officer informs a suspect that the officer intends to do something

8

that the officer is legally authorized to do under the circumstances, such conduct does not amount to coercion. *See State v. Garcia*, 143 Idaho 774, 779-80, 152 P.3d 645, 650-51 (Ct. App. 2006). In *Garcia*, the defendant moved to suppress evidence obtained as a result of a search of his vehicle. He argued that the officer's statement, "that if they [Garcia and the others in the group] handed over the marijuana they would be cited and released, but if they did not, they would be arrested," rendered Garcia's consent to search coerced, and thus ineffective. *Id.* at 779, 152 P.3d at 650. The *Garcia* Court determined:

> Initially, it should be noted that bowing to events, even if one is not happy about them, is not equivalent to being coerced. *United States v. Miller*, 589 F.2d 1117, 1132, n.13 (1st Cir. 1978). The voluntariness of consent is not impaired simply because one is faced with two unpleasant choices--which here, Garcia argues, was choosing between consenting to the search and allowing the marijuana in his truck to be discovered and not consenting and risking arrest of himself and his companions.

*Garcia*, 143 Idaho at 779, 152 P.3d at 650. Thus, the Court held that "an officer's implied or explicit offer not to arrest a suspect if he 'turns over what he has' is not coercive if it merely informs the suspect of the officer's intention to do something that is within the officer's authority based on the circumstances." *Id.* at 779-80, 152 P.3d at 650-51.

Here, Trooper DeBie informed LeClercq of his intention to obtain a blood draw should she refuse to comply with the breath test. The unpleasantness of the available options did not render the officer's statement coercive. The magistrate determined that while the officer's use of the word "force" to describe what would happen if LeClercq refused the breath test was troubling, under the totality of the circumstances, the officer's actions were permissible. Informing a suspect that refusal of a breath test will result in a "forcible" blood draw may not be an advisable practice. However, Trooper DeBie's statement, in light of all of the circumstances, did not amount to coercion such that it rendered LeClercq's implied consent involuntary.

Moreover, a similar argument to that now presented on appeal, that an officer's statement may render the driver's implied consent involuntary, was addressed and roundly rejected in *State v. Nickerson*, 132 Idaho 406, 973 P.2d 758 (Ct. App. 1999). In that case, the defendant, after having been informed of the consequences of a refusal to take an alcohol concentration test, refused to submit to a breath test. The officers informed Nickerson that because he was on parole he could not refuse the test, and that if he refused he would go back to prison. Nickerson argued that the officers' comments were coercive and rendered his consent to the test

9

involuntary. *Nickerson*, 132 Idaho at 409, 973 P.2d at 761. The *Nickerson* Court determined: "Nickerson's argument that his consent to the BAC at the police station was involuntary is of no consequence because he had impliedly consented as a matter of law." *Id.* at 410, 973 P.2d at 762. The Court set forth the law relative to implied consent and concluded:

> It is thus apparent that the question of Nickerson's consent at the police station, whether voluntary or involuntary, is superfluous, for actual consent at that point is unnecessary to the lawfulness of the procedure or the admissibility of the test results.

*Nickerson*, 132 Idaho at 410, 973 P.2d at 762. Thus, as in *Nickerson*, LeClercq's argument that her consent was involuntary is irrelevant because she impliedly consented as a matter of law.

LeClercq essentially seeks to distinguish or limit the application of Idaho's entire body of case law on this issue. She acknowledges as much in her reply brief:

> It is apparent that the Idaho Appellate Courts have applied the implied consent statute without the foundation of the statutory provisions to use it as an exception to the Fourth Amendment. It is respectfully submitted that such treatment of the implied consent law is misplaced. Understandably, the Respondent suggests in its brief that, "[b]ecause the question of coercion is legally irrelevant when the breath test is the result of implied consent <u>Nickerson</u>, 132 Idaho at 410, 973 P.2d at 762, this argument fails." *See*, Respondent's Brief, p.7. However, the State's argument does not hold up when compared to *Schmerber*, *Diaz*, and *DeWitt*, where the various courts have acknowledged that regardless of the means of obtaining blood alcohol content under the Fourth Amendment, it must be reasonable.

LeClercq's reliance upon *Schmerber*, *Diaz*, and *DeWitt* is misplaced as they all discussed the reasonableness of performing the actual blood draw. A blood draw was not conducted in this case, and LeClercq has not challenged the reasonableness of the administration of the breath test. She simply argues that Trooper DeBie's comments rendered the search unreasonable. Essentially, the position advanced by LeClercq is that when a police officer is asked a question, he or she must remain mute except to reiterate the language set forth in the statute. There is no such requirement, and Trooper DeBie's comments were not unreasonable such that they vitiated LeClercq's statutorily implied consent to the breath test.[5]

---

[5] LeClercq relies upon out-of-state cases to support her argument that the breath test should be suppressed due to coercion and violation of Idaho's implied consent statute. These cases are inapplicable as they are interpreting their own state statutes, which are much different than Idaho's statute. Moreover, they do not have any persuasive value with respect to requiring

### III.

### CONCLUSION

LeClercq gave her implied consent as a matter of law. The officer's statement, under the totality of the circumstances, did not amount to coercion rendering LeClercq's implied consent involuntary. Accordingly, we affirm the district court's appellate decision affirming the magistrate's denial of the motion to suppress.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**

---

suppression due to a failure to strictly observe the statute because suppression is not required for such a failure in Idaho. *See DeWitt*, 145 Idaho at 714, 184 P.3d at 220.