# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46511

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

PATRICK LAWRENCE GROM,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Filed: March 26, 2020

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge. Hon. Timothy Van Valin, Magistrate.

Order of the district court, on intermediate appeal, affirming the magistrate court's order, affirmed.

Phelps & Associates; Douglas D. Phelps, Spokane, for appellant. Douglas D. Phelps argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent. Kale D. Gans argued.

HUSKEY, Chief Judge

Patrick Lawrence Grom appeals from the district court's intermediate appellate decision affirming the magistrate court's order. Grom argues the district court erred when it affirmed the magistrate court's order denying Grom's motion to suppress. Because Idaho Code § 18-8002 is constitutional and Grom's rights were not violated, we affirm the decision of the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Grom was pulled over after he failed to use a traffic signal while driving. Officers suspected Grom was intoxicated. During the traffic stop, Grom asked to contact his attorney, but an officer denied this request. Also, Grom attempted to run away from the officers during the stop. Grom was taken to the hospital to be medically cleared. While at the hospital, an officer attempted

1

to collect breath samples from Grom, but the blows were invalid. At Grom's request, a blood draw was taken. Two vials were drawn; one to be used by the State and the other to be used by Grom.

Thereafter, Grom was transported to the Kootenai County jail to be booked. Before and after Grom was booked, he was allowed to use the telephone. The magistrate court found that Grom arrived at the jail at 12:41 a.m., was given access to a telephone no later than 1:00 a.m., and was not booked until 1:35 a.m. In addition, Grom had access to the telephone after he was booked and there is evidence that Grom made multiple phone calls.

The State charged Grom with misdemeanor driving under the influence, I.C. § 18-8004, and misdemeanor resisting or obstructing an officer, I.C. § 18-705. Grom filed a motion to suppress, and the magistrate court held a hearing on the matter. The court denied Grom's motion, and Grom appealed to the district court. Following a hearing, the district court allowed the parties to file supplemental briefing on the issue. The district court issued a memorandum decision and order which affirmed the magistrate court's decision denying Grom's motion to suppress. Grom timely appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate court's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, the appellate courts do not review the decision of the magistrate court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id.*

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

2

## III.

## ANALYSIS

Grom presents two reasons why his motion to suppress should have been granted. First, Grom claims the applicable statute, I.C. § 18-8002, is unconstitutional. Second, Grom argues he was prevented from contacting his attorney, which violated his Fifth Amendment right to counsel. Related to those arguments, at oral argument, Grom asserted the magistrate court's factual findings regarding the timing of events was not supported by substantial and competent evidence. The magistrate court found that Grom arrived at the jail at 12:41 a.m. and was given access to a telephone no later than 1:00 a.m. Grom made phone calls and was not booked until 1:35 a.m. The jail call logs support that conclusion, and Grom's claim at oral argument does not negate the fact that the magistrate court's findings are supported by substantial and competent evidence.

### A.    Idaho Code § 18-8002 Is Constitutional and Does Not Violate Grom's Fourth Amendment Right

Grom argues I.C. § 18-8002 is unconstitutional. Grom claims I.C. § 18-8002 is inconsistent with the United States Supreme Court holding in *Missouri v. McNeely*, 569 U.S. 141 (2013).

Idaho Code § 18-8002 states, in relevant part:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or was in actual physical control of a motor vehicle in violation of the provisions of section 18-8004 or 18-8006, Idaho Code.

(2) Such person shall not have the right to consult with an attorney before submitting to such evidentiary testing.

. . . .

(f) After submitting to evidentiary testing he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). Therefore, warrantless forced blood draws generally violate both constitutions. *See McNeely*, 569 U.S. at 147; *State v. Eversole*, 160 Idaho 239, 242, 371 P.3d 293, 296 (2016). However, the warrant requirement does not apply if the person subjected to the

3

search consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 221-22 (1973); *Wulff*, 157 Idaho at 419, 337 P.3d at 578. "The State bears the burden of proving by a preponderance of the evidence that consent was voluntary." *State v. Charlson*, 160 Idaho 610, 617, 377 P.3d 1073, 1080 (2016). "Whether consent was voluntary is determined by examining a totality of the circumstances." *Id.*

Idaho's implied consent statute, I.C. § 18-8002(1), states that "any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol." Before *McNeely*, the Idaho Supreme Court maintained that statutorily implied consent satisfied the consent exception to the warrant requirement and actions or statements revoking implied consent were ineffective. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575 (2014); *State v. Woolery*, 116 Idaho 368, 373, 775 P.2d 1210, 1215 (1989), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575. In *McNeely*, the United States Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 569 U.S. at 165.

Following *McNeely*, the Idaho Supreme Court held that, "when it operates as a per se exception to the warrant requirement," Idaho's implied consent statute does not analyze the voluntariness of consent and is, therefore, inconsistent with the United States Supreme Court's repeated "disapproval for categorical rules." *Wulff*, 157 Idaho at 421, 337 P.3d at 580. Accordingly, the Court held: "Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent." *Id.* at 423, 337 P.3d at 582. The Court overruled its prior implied consent cases "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule." *Id.*

In regard to the first hurdle, the *Wulff* Court stated: "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Id.* In regard to the second hurdle, the Idaho Supreme Court has since clarified its holding in *Wulff*. In *Eversole*, the Court explained the consent implied under Idaho's statute is voluntary only so long as that consent may be withdrawn. *Eversole*, 160 Idaho at 242, 371 P.3d at 296. Thus, "under current Idaho law, a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent given under Idaho's implied consent statute." *Id.* Further, in *State v. Rios*, 160 Idaho 262,

4

371 P.3d 316 (2016), the Court recognized that "implied consent may be withdrawn where a suspect refuses to consent." *Id.* at 266, 371 P.3d at 320. Finally, in *Charlson*, the Court held that "the statutorily provided implied consent is valid and remains in place until affirmatively withdrawn." *Charlson*, 160 Idaho at 618, 377 P.3d at 1081. Thus, a driver on Idaho roads impliedly consents to a warrantless blood draw unless he affirmatively withdraws his statutorily implied consent by refusing, objecting to, or protesting the blood draw.

Grom argues Idaho's implied consent statute, set forth in I.C. § 18-8002(1), violates the Fourth Amendment due to the holding in *McNeely*. We disagree. Since 2013, when the United States Supreme Court issued *McNeely*, Idaho appellate courts have incorporated the *McNeely* precedent into cases involving driving under the influence and have never found I.C. § 18-8002 to be unconstitutional. When considering the constitutionality of the implied consent statute since *McNeely*, Idaho Courts have not found a violation of the Fourth Amendment because inherent in the requirement of consent is the right of the driver to withdraw the consent. *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014).

In particular, in *Sims v. State*, 159 Idaho 249, 358 P.3d 810 (Ct. App. 2015), this Court addressed the same argument made by Grom in this case. There, Sims argued a warrantless blood draw under Idaho's implied consent statute violated his Fourth Amendment right, pursuant to the holding in *McNeely*. *Sims*, 159 Idaho at 255, 358 P.3d at 816. This Court explained that Idaho case law was contrary to Sims's argument, and held Idaho's implied consent statute continues to be valid, albeit in a form that is revocable. *Id.* at 255-56, 358 P.3d at 816-17.

Most recently, the Idaho Supreme Court in *State v. Pool*, 166 Idaho 238, 457 P.3d 890 (2020) confirmed that the implied consent law in Idaho remains valid after *McNeely*. There, Pool asked the Supreme Court to reconsider its prior decisions regarding the validity of statutorily implied consent. *Pool*, 166 Idaho at 241-42, 358 P.3d at 893-94. The Supreme Court denied Pool's request. *Id.* at 242-45, 358 P.3d at 894-97. Thus, to the extent Grom is challenging the constitutionality of Idaho's rule on implied consent set forth in I.C. § 18-8002(1), his position finds no support from Idaho precedent since *McNeely*.

**B.      Grom's Constitutional Rights Were Not Violated From Any Undue Delay**

Grom also argues his constitutional rights were violated because law enforcement officers prevented Grom from contacting his attorney for an unreasonable amount of time. Grom claims he was prejudiced by this delay because he was unable to obtain exculpatory evidence.

Grom did not have a right to counsel prior to evidentiary testing. Under I.C. § 18-8002(2), any person driving does not have the right to consult with an attorney before submitting to evidentiary testing. Here, Grom generally asserts that he was deprived of his constitutional right to counsel until he was bonded out of jail and had access to his cell phone. To the extent this claim incorporates the period of time prior to evidentiary testing, the statutory language is clear and unambiguous that such a right does not exist. The magistrate court addressed this issue and properly found that, pursuant to I.C. § 18-8002, Grom did not have the right to counsel before submitting to the blood draw.

As for the period of time after evidentiary testing, Grom argues his right to due process was violated because he was denied access to his cell phone for nine hours, and thus, was unable to contact his attorney. The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees to an accused "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process also imposes a standard of fundamental fairness in criminal proceedings. *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). Nonetheless, the State is entitled to conduct blood or breath-alcohol concentration tests of drivers suspected of driving under the influence, and doing so does not violate a suspect's Fifth Amendment right against self-incrimination or Fourth Amendment right against unreasonable searches if the testing is conducted in a reasonable manner. *State v. Green*, 149 Idaho 706, 709, 239 P.3d 811, 814 (Ct. App. 2010).

In the proceedings below, as well as on appeal, Grom relies on *State v. Carr*, 128 Idaho 181, 911 P.2d 774 (Ct. App. 1995). In *Carr*, this Court addressed whether the right to due process was violated when the defendant was denied her request to call an attorney following a breath test. *Id.* at 183, 911 P.2d at 776. There, the defendant was arrested for driving under the influence and agreed to take a breath test. *Id.* at 182, 911 P.2d at 775. After failing the test, the defendant asked if she could speak with an attorney and the officers denied her request. The defendant was not allowed access to a telephone until approximately five hours after her arrest. *Id.*

This Court held that a constitutional violation occurred in *Carr*. *Id.* at 183, 911 P.2d at 776. By denying the defendant access to a telephone for approximately five hours after her arrest, the State denied the defendant the means by which she could establish her defense. *Id.* at 184, 911 P.2d at 777. This Court concluded:

6

As a result, when a person is arrested for DUI and given an evidentiary BAC test, that person must be allowed, at a minimum, to make a phone call upon request to do so. Such contact provides the means through which the arrestee is able to gather evidence tending to refute the State's evidence of intoxication and thereby preserve the right to a fair opportunity to defend against the State's accusations.

*Id.* (internal quotations omitted).

More recently in *Green*, this Court distinguished *Carr* and held there was no violation of the defendant's right to due process when he was denied access to a telephone until after a blood draw. *Green*, 149 Idaho at 710, 239 P.3d at 815. There, the defendant was arrested for driving under the influence and he refused to submit to a breath test without first speaking to an attorney. *Id.* at 707, 239 P.3d at 812. Officers denied the defendant's request, completed a blood draw, and transported the defendant to jail where he was booked. *Id.* This Court held that, so long as the State does not cause an undue delay, there is nothing unfair in a procedure that requires a suspect to submit to a State-administered test before being given access to a telephone. *Id.* at 710, 239 P.3d at 815. Although the record was unclear whether or when the defendant was given access to a telephone in *Green*, this Court found no due process violation because there was no evidence officers denied the defendant access to a telephone after the blood draw was completed. *Id.* at 711, 239 P.3d at 816.

Here, the case is more like *Green* than *Carr*. There is no evidence that officers prevented Grom from using a telephone after the blood draw. Unlike in *Carr*, where officers denied the defendant access to a telephone for five hours, Grom had access to a telephone when he arrived at the jail, before and after he was booked. Grom was allowed to make a phone call within a relatively short period of time following the evidentiary test, thereby conforming to the rule set forth in *Carr*.

Furthermore, like in *Green*, there was no constitutional violation even if Grom did not have immediate access to the telephone and even if the call occurred after the blood draw. Although several hours passed from the time Grom was arrested and the time he was booked, there is uncontested evidence that Grom's behavior was the reason for any delay prior to the booking.[1] The magistrate court found any delay and any injuries sustained by Grom were caused by Grom's own non-compliance with the officers' requests prior to Grom's arrest, including Grom running from the officers and manipulating the breath test. Grom does not dispute these findings by the

---

[1] The magistrate court did not make a finding as to the exact time Grom was arrested. The district court acknowledges this in its memorandum decision, before citing to testimony that Grom was arrested at 9:52 p.m.

magistrate court.  Therefore, as in *Green*, there was no violation of Grom's right to due process when he was denied access to a telephone until after the blood draw.

Grom also claims he was unable to obtain an evidentiary test due to the actions of the officers.  According to Grom, there was no way to arrange for a neutral third party test of his blood alcohol level.  Grom has not shown how the officers prevented him from obtaining an evidentiary test.  It is undisputed that two vials were drawn while Grom was at the hospital, one to be used by the State and the other to be used by Grom.  Although Grom argues the extra vial of blood does not substitute for his right to obtain his own independent third-party testing, he provides no argument or authority to support this claim.  The extra vial of blood--drawn for Grom to use-- enabled his independent testing rather than obstructed it.  Grom fails to show how the officers impeded his right to independent testing or how his access to exculpatory evidence was dependent on Grom's ability to use his cell phone after the evidentiary test.

Finally, Grom concedes in his brief that he had access to a phone.  Nonetheless, Grom claims the issue here is that the officers denied Grom access to his personal cell phone which contained the phone number of his attorney.  Grom cites to no authority for the claim that a due process violation occurs when an officer prevents an individual from using his or her cell phone during an arrest.  Also, Grom fails to address the magistrate court's finding that Grom was given the opportunity to look at his cell phone during the pre-booking process in order to find his attorney's number and thereafter, had access to a telephone and made calls.  To the extent Grom asks this Court to expand the *Carr* holding to permit detainee's access to cell phones during an investigatory phase and prior to evidentiary testing, we decline to do so.

### C.      Grom Was Not Denied His Fifth and Sixth Amendment Rights

Grom argues I.C. § 18-8002 is unconstitutional because it violates his Fifth and Sixth Amendment rights.  According to Grom, Idaho citizens must submit to evidentiary testing--in violation of the Fourth Amendment--in order to maintain their Fifth and Sixth Amendment rights.  Grom claims it is unconstitutional to require a defendant to submit to evidentiary testing before speaking with an attorney.

First, Idaho case law has not found the applicable statute, I.C. § 18-8002, to be unconstitutional.  Grom is therefore asking this Court to move beyond precedent and strike down the statutory language that, according to Grom, forces citizens to sacrifice their Fourth Amendment right in order to speak with an attorney, which is guaranteed under the Fifth and Sixth Amendment

8

rights. This we decline to do. Second, Grom did not waive his Fourth Amendment right in order to exercise his Fifth and Sixth Amendment rights, as he argues on appeal because neither the Fifth Amendment nor the Sixth Amendment is implicated in this case.

The Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber*, 384 U.S. at 761. The due process protections of the Fifth Amendment arise in the context of a custodial interrogation. *State v. Silver*, 155 Idaho 29, 31, 304 P.3d 304, 306 (Ct. App. 2013). While *Miranda*[2] warnings are designed to protect against self-incrimination during a custodial interrogation, the gathering of evidence is not considered testimonial or communicative evidence to which *Miranda* warnings apply. In *State v. Harmon*, 131 Idaho 80, 952 P.2d 402 (Ct. App. 1998), this Court explained:

> In *Schmerber*, the United States Supreme Court held that a state-compelled blood test to determine alcohol concentration is physical evidence, not testimony or a communicative act, and therefore is unprotected by the Fifth Amendment privilege. Moreover, in *South Dakota v. Neville*, 459 U.S. 553 (1983), the Supreme Court stated, "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*"

*Harmon*, 131 Idaho at 84-85, 952 P.2d at 406-07 (internal citations omitted). There, Harmon's breath test results were admissible despite the lack of any *Miranda* warnings because the results were "not testimonial or communicative evidence and because the officer's request for the test was not an interrogation." *Harmon*, 131 Idaho at 85, 952 P.2d at 407.

Here, as in *Harmon*, the blood test results were not testimonial or communicative evidence, nor was the officer's request for the test an interrogation. Consequently, there is no Fifth Amendment right that attaches to the evidentiary testing involved in drawing blood. *Green*, 149 Idaho at 709, 239 P.3d at 814.[3] Because the Fifth Amendment is not implicated, Grom was not required to waive his Fourth Amendment right in order to exercise his Fifth Amendment right.

---

[2]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]     In *State v. Green*, 149 Idaho 706, 239 P.3d 811 (Ct. App. 2010), this Court specifically assessed whether a DUI arrestee's Fifth Amendment right was violated by delaying the arrestee's opportunity to gather evidence until he or she has submitted to the test requested by law enforcement. *Green*, 149 Idaho at 710, 239 P.3d at 815. This Court held there was no violation of the defendant's right to due process in those circumstances. *Id.*

Grom also argues the preservation or gathering of evidence in a DUI investigation is a critical stage of the prosecution and, thus, Grom's Sixth Amendment right was violated. The Sixth Amendment right to the assistance of counsel applies at any critical stage of the prosecution. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the United States Supreme Court clarified in *Kirby v. Illinois*, 406 U.S. 682 (1972), that this right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated." *Id.* at 688.

This Court has previously addressed a similar claim. In *In re McNeely,* 119 Idaho 182, 804 P.2d 911 (Ct. App. 1990), this Court held:

> [T]esting for BAC under the implied consent statute is an evidentiary procedure and, as in this case, is conducted before formal criminal charges are initiated by the filing of a complaint. Therefore, the testing procedure does not constitute a 'critical stage' of the underlying criminal proceedings for DUI.

*Id.* at 187, 804 P.2d at 916.

Because the gathering of evidence is not a critical stage of the prosecution and Grom had no Sixth Amendment right to counsel prior to the initiation of formal charges, Grom was not required to waive his Fourth Amendment rights in order to assert his Sixth Amendment right.

**IV.**

**CONCLUSION**

Because I.C. § 18-8002 is constitutional and Grom's rights were not violated, we affirm the decision of the district court.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.